In the Matter of AVILDSEN TOOLS AND MACHINES, INC., a Delaware Corporation, Debtor,

Edward AVILDSEN; Robert Avildsen; and Morton Balon, Plaintiffs,

v.

UNITED STATES of America, Defendant.

Nos. 83 C 4985, 83 C 6491.

United States District Court, N.D. Illinois, E.D.

June 5, 1984.

James K. Wilkens, Tax Div., Dept. of Justice, Washington, D.C., Michael von Mandel, Chicago, Ill., for plaintiffs.

Malcolm Gaynor and Robert T. Grueneberg, Asst. U.S. Atty., Chicago, Ill., for defendant.

MEMORANDUM OPINION
AND ORDER

ASPEN, District Judge:

This matter involves two consolidated civil cases: No. 83 C 4985 is an appeal by the United States from orders of the United States Bankruptcy Court for the Northern District of Illinois, and No. 83 C 6491 is an income tax refund suit to recover partially-paid tax assessments made against the plaintiffs under section 6672 of the Internal Revenue Code of 1954 (26 U.S.C.). In the latter action, the United States has filed a counterclaim seeking to reduce to judgment the unpaid balance of the assessments. Presently before the Court is the government's motion for partial summary judgment in the refund suit—a motion which involves the same legal issues as in the bankruptcy appeal. For the reasons set forth below, the government's motion for partial summary judgment is granted, and the bankruptcy court's orders of March 5, 1982, and June 16, 1983, are reversed.

These cases involve the failure of Avildsen Tools and Machines, Inc. ("Avildsen" or "the debtor") to pay to the United States certain federal and social security (FICA) taxes withheld from the wages of its employees, as well as the portion to be contributed by the employer. Avildsen filed for bankruptcy, and the bankruptcy court entered an order on July 12, 1977, authorizing the debtor to continue operating its business under Chapter XI of the (now superseded) Bankruptcy Act. On June 27, 1980, the bankruptcy court entered an order approving the sale of all of Avildsen's assets upon the return of bids in open court on July 15, 1980. The bankruptcy court entered an order on July 15 confirming the sale of the assets and specifically authorizing the debtor to pay its outstanding liabilities with the sale proceeds. Also on July 15, Avildsen paid the Internal Revenue Service ("IRS") $77,524.78, designating the particular application of those funds. A week later, on July 22, Avildsen paid the IRS $107,825.31, again stating how the payment was to be applied against the debtor's tax liabilities. Although the IRS initially applied Avildsen's payments as the debtor requested, it later reapplied the money to other portions of Avildsen's unpaid tax liabilities.

On December 29, 1980, Avildsen's Chapter XI proceeding was dismissed, and on December 30, 1980, Avildsen filed a petition for reorganization under Chapter 11 of the new Bankruptcy Code (11 U.S.C. § 1101 *et seq.*). On March 5, 1982, without giving the United States any notice or opportunity to be heard, Avildsen obtained an order from the bankruptcy court ruling that its payments to the IRS were voluntary and were to be applied as Avildsen had directed. The bankruptcy court, 30 B.R. 911, denied the government's motion to vacate this order on June 16, 1983, and the United States appeals this decision. The United States also moves for partial summary judgment in the tax refund case, arguing that as a matter of law Avildsen's payments to the IRS were involuntary payments over which the debtor has no right to direct application.

I.

The United States first argues that the bankruptcy court acted without jurisdiction when it entered orders in the Chapter 11 Bankruptcy Code case concerning payments the debtor made when it was a party in the Chapter XI Bankruptcy Act case. The government's characterization of these two cases as "entirely different" is rather strained, however, and this argument is unpersuasive. The second case was simply a continuation of the first case, filed with the same bankruptcy judge the day after the first case was dismissed. Both cases involved the same parties and interests. The dismissal and refiling were done with the consent of the creditors' committee and for the sole purpose of utilizing a provision in the new Bankruptcy Code relating to preferred stockholders. Thus, the dismissal and refiling of the case had no effect on the bankruptcy court's jurisdiction to enter the March 5, 1982 and June 16, 1983 orders.

## II.

The central issue in these cases is whether Avildsen's payments to the IRS are properly characterized as voluntary or involuntary. When a taxpayer makes voluntary payments to the IRS, it has a right to direct the application of payments to whatever type of liability it chooses. *E.g.*, *Muntwyler v. United States*, 703 F.2d 1030, 1032 (7th Cir.1983); *O'Dell v. United States*, 326 F.2d 451, 456 (10th Cir.1964). When payments are involuntary, the policy of the IRS is to allocate the payments as it sees fit. Policy Statement P–5–60, *reprinted in Internal Revenue Manual* (CCH) 1305–15. This rule has been uniformly followed by the courts, *see, e.g.*, *United States v. De Beradinis*, 395 F.Supp. 944, 952 (D.Conn.1975), *aff'd mem.*, 538 F.2d 315 (2d Cir.1976), and the Seventh Circuit has accepted it as sensible tax policy. *Muntwyler*, 703 F.2d at 1032.

One of the earliest and most frequently cited definitions of involuntary payments is that of the Tax Court in *Amos v. Commissioner*, 47 T.C. 65, 69 (1966): "An involuntary payment of Federal taxes means any payment received by agents of the United States as a result of distraint or levy or from a legal proceeding in which the Government is seeking to collect its delinquent taxes or file a claim therefor." The Seventh Circuit has noted that *Amos* and the cases decided after it

> uniformly define an involuntary payment as one made pursuant to judicial action or some form of administrative seizure, like a levy. A recent case on the subject is *Arnone v. United States*, 79–1 U.S.Tax Cas. (CCH) ¶ 9356 (N.D.Ohio 1979). There, the court held that the payment was involuntary because it was pursuant to a levy on a bank account: "[T]he plaintiff had no right to direct the application of funds obtained through enforced collection by administrative seizure." *Id.* at 86,846. Similarly, the court in *United States v. De Beradinis*, 395 F.Supp. 944 (D.Conn.1975), *aff'd mem.*, 538 F.2d 315 (2d Cir.1976), held that payments were involuntary where "they resulted from Internal Revenue

levies or participation in litigation." *Id.* at 952.

*Muntwyler*, 703 F.2d at 1033.

Several cases have held that payments made by a taxpayer involved in a bankruptcy proceeding are involuntary. For example, in *O'Dell v. United States*, 326 F.2d 451, 456 (10th Cir.1964), the court said that a debtor could not direct application of his money to such debts as he chose where the payment was made in an execution or judicial sale. Similarly, the Seventh Circuit in *Monday v. United States*, 73–2 U.S.Tax Cas. (CCH) ¶ 9589 (7th Cir.1973), held that money paid by a debtor in a bankruptcy proceeding to satisfy its tax liabilities was paid involuntarily, and thus the bankruptcy referee had no authority to direct the government to apply the money to any particular debts. *See also In re Mister Marvins, Inc.*, 84–1 U.S.Tax Cas. (CCH) ¶ 9270 (E.D.Mich.1984); *In re Hubler Rentals, Inc.*, 79–2 U.S.Tax Cas. (CCH) ¶ 9621 (E.D.Pa.1979); *First National City Bank v. Kline*, 439 F.Supp. 726 (S.D.N.Y.1977); *In re Vincent-McCall Co.*, 68–2 U.S.Tax Cas. (CCH) ¶ 9591 (E.D.Wis.1968).

Both the district court and the Seventh Circuit Court of Appeals discussed at length the voluntariness of payments to the IRS in the recent case of *Muntwyler v. United States*, 49 A.F.T.R.2d 82–1217 (N.D.Ill.1982), *aff'd*, 703 F.2d 1030 (7th Cir. 1983). In *Muntwyler*, a corporation which was delinquent in paying federal withholding taxes entered into a common law, nonjudicial assignment for the benefit of creditors. The IRS did not serve a levy upon the assignee but simply filed a claim with him. The assignee then sent the IRS some money and directed that the funds be applied to specific trust fund portions of the unpaid taxes. The IRS accepted the checks but applied the funds first to non-trust fund portions of the unpaid taxes.

The district court and court of appeals agreed that the payments in *Muntwyler* were voluntary. However, both courts clearly distinguished the factual situation in that case—an assignment for the benefit

of creditors—from a judicial proceeding in bankruptcy. The district court stated that "[a] common thread running through all the definitions of involuntary payment is intervention by a court or administrative agency." 49 A.F.T.R.2d at 82–1219. The court then noted that an assignment for the benefit of creditors involved no court action, thus differing significantly from a bankruptcy proceeding. *Id.* The Seventh Circuit agreed with the district court, specifically refusing to equate the non-judicial assignment for the benefit of creditors with a formal bankruptcy proceeding. 703 F.2d at 1034 n. 2. The Court of Appeals repeatedly indicated that payments made in bankruptcy are involuntary, precisely because court action is involved. *Id.* at 1033–34.

■ In light of these authorities, Avildsen's payments must be considered involuntary. The payments were received by the IRS "from a legal proceeding in which the Government is seeking to collect its delinquent taxes or file a claim therefor." *Amos*, 47 T.C. at 69. The payments were made after the bankruptcy court approved the sale of Avildsen's assets and ordered Avildsen to pay its outstanding liabilities with the sale proceeds. The presence of court action thus distinguishes this case from the factual situation in *Muntwyler*, where "there was no levy, judicial order, execution, or judicial sale." *Muntwyler*, 703 F.2d at 1033. Here, there were both judicial orders and a judicial sale.

Plaintiffs attempt to distinguish this case from the line of cases which hold that payments made in bankruptcy are involuntary by asserting that this principle applies only to liquidating bankruptcies and not to reorganizations. However, none of these cases contains such a limitation; each draws the distinction between situations in which the IRS takes enforced collection measures and those in which the IRS does not, rather than between liquidating and

reorganizing bankruptcies.[1] The Seventh Circuit made it abundantly clear that it was the involvement of a court—not the type of bankruptcy—which makes payments by a debtor in bankruptcy involuntary. *Muntwyler*, 703 F.2d at 1033. Indeed, regardless of whether the debtor is involved in a liquidating bankruptcy or a reorganization, the IRS is precluded from attempting any collection other than by filing a claim in the judicial proceeding. Thus, the fact that this case deals with a reorganization rather than a liquidating bankruptcy does not change the involuntary nature of Avildsen's payments.

In deciding that Avildsen's payments were voluntary, the bankruptcy court also tried to distinguish this case from the authorities which hold that a debtor's payments in bankruptcy are involuntary. The bankruptcy court determined that these other courts had not ruled that *all* payments to the IRS by bankruptcy debtors are involuntary, but had limited their rulings to the individual situations before them. However, this is simply too restrictive a view of the precedential value of these cases. The bankruptcy court also stated that the facts of this case are extremely similar to those in *Muntwyler*. However, this overlooks the explicit distinctions the *Muntwyler* courts made between a non-judicial assignment for the benefit of creditors and a formal bankruptcy proceeding as in this case. The bankruptcy court recognized that Avildsen's payments "were made pursuant to the bankruptcy court order which authorized debtor to pay its outstanding liabilities with the [judicial] sale proceeds," but it failed to acknowledge that it was precisely this court involvement which rendered the payments involuntary. *See Muntwyler*, 703 F.2d at 1033. Thus, the bankruptcy court's ruling that Avildsen's payments were voluntary must be reversed.

---

**1.** Plaintiffs cite one case which does make this distinction, *In re Hartley Plumbing Co., Inc.*, 32 B.R. 8 (M.D.Bkrtcy.Ala.1983). However, the court in *Hartley* did not discuss any of the authorities cited by the government here, and we find the latter decisions—particularly those from the Seventh Circuit—controlling in the present case.

### III.

The bankruptcy court also ruled that the IRS could not reapply Avildsen's payments to different tax liabilities eight months after it applied the funds as Avildsen had requested. The court reasoned that the IRS had entered into a contract with Avildsen, in effect settling the tax dispute between the parties when it accepted Avildsen's payments. The bankruptcy court correctly stated that agreements compromising tax controversies may be contracts. However, no such agreement exists in the present case. In the case cited by the bankruptcy court, *Kurio v. United States,* 429 F.Supp. 42 (S.D.Tex. 1970), the parties actually tried to negotiate an out of court settlement of their case just before trial. Here, on the other hand, there was no such discussion between the parties. In fact, the bankruptcy court stated that "[n]o evidence has been presented to indicate that any affirmative representations were made by the IRS to the debtor regarding application of the funds." Nevertheless, the bankruptcy court *inferred* an agreement from an IRS clerical worker's acceptance of Avildsen's restrictively endorsed checks and initial application of the payments as directed by Avildsen. This inference is ill-advised in light of the Seventh Circuit's decision in *Holcomb v. United States,* 622 F.2d 937 (7th Cir. 1980). In *Holcomb,* the Court of Appeals held that there was no binding agreement between the IRS and the taxpayer to apply in a particular manner payments made by the debtor in a bankruptcy proceeding. Because the taxpayer was already obligated to pay the taxes, the court found that there was no legal consideration for such an agreement. *Id.* at 941–42. Similarly, Avildsen was already legally obligated to pay the corporate tax liability at issue, and there was no consideration for any agreement—express or implied—to apply the payments as Avildsen requested.

Neither the bankruptcy court nor the plaintiffs in this case have cited any authorities which suggest that the IRS is estopped or otherwise barred from reapplying the payments as it has done here. Given the involuntary nature of the payments and the lack of an agreement to apply the payments to specific tax liabilities, the United States is not prevented from asserting that the acts of the IRS clerical worker were improper. *See, e.g., Federal Crop Insurance Corp. v. Merrill,* 332 U.S. 380, 384, 68 S.Ct. 1, 3, 92 L.Ed. 10 (1947); *Brubaker v. United States,* 342 F.2d 655, 662 (7th Cir.1965); *see also* 10 Mertens, *Law of Federal Income Taxation,* § 60.15 (1976).

———

Accordingly, the government's motion for partial summary judgment is granted, and the bankruptcy court's orders of March 5, 1982, and June 16, 1983, are reversed. A status hearing is set for 83 C 6491 on June 22, 1984, at 10:00 a.m. At such time, if any issues remain unresolved, the parties should be prepared to advise the Court as to how they will proceed. It is so ordered.