## In re A & B HEATING & AIR CONDITIONING, INC., Debtor.

### Bankruptcy No. 84–424 BK–T–11.

United States Bankruptcy Court,
M.D. Florida,
Tampa Division.

Aug. 28, 1985.

Shirley C. Arcuri, Tampa, Fla., for debtor.

Robert W. Merkle, U.S. Atty., M.D. Florida, Tampa, Fla., Marika Lancaster, Trial Atty., Tax Div., Dept. of Justice, I.R.S., Special Procedures, Washington, D.C., for U.S.

## ORDER ON OBJECTION TO THE CONFIRMATION OF THE DEBTOR'S PROPOSED FIRST AMENDED PLAN OF REORGANIZATION

ALEXANDER L. PASKAY, Chief Judge.

THIS IS a Chapter 11 case and the matter under consideration is an Objection to the Confirmation of the Debtor's Proposed First Amended Plan of Reorganization filed by the United States of America. The Objection is based upon a number of grounds, however, the only issue to be addressed by this Order is whether the Internal Revenue Service (IRS) is bound by a provision in the Debtor's Plan which states that all payments to the IRS "shall be credited first to the trust fund portion of the claim until it

is paid in full." The United States claims that all payments to the IRS under a confirmed Chapter 11 plan are involuntary payments and, therefore, that the IRS may apply such payments as it sees fit and that the Debtor is powerless to direct how payments are to be credited.

The law is clear that a taxpayer making voluntary payment to the IRS has the right to direct the application of those payments to whatever type of liability it chooses. *Muntwyler v. United States*, 703 F.2d 1030 (7th Cir.1983); *O'Dell v. United States*, 326 F.2d 451 (10th Cir.1964). Conversely, when payment is involuntary, the IRS may allocate such payment as it sees fit. *United States v. DeBeradinis*, 395 F.Supp. 944 (D.Conn.1975), aff'd. 538 F.2d 315 (2d Cir.1976); *Avildsen v. United States (In re Avildsen Tools and Machines, Inc.)*, 40 B.R. 253 (N.D.Ill.1984). The definition of an involuntary payment can be found in *Amos v. Commissioner*, 47 T.C. 65 (1966) wherein the Court held that;

"An involuntary payment of Federal taxes means any payment received by agents of the United States as a result of distraint or levy or from a legal proceeding in which the Government is seeking to collect its delinquent taxes or file a claim therefore."

Policy Statement P–5–60 reprinted in Internal Revenue Manual (CCH) 1350–15 states that "the taxpayer, of course has no right of designation in the case of collections resulting from enforced collection measures."

In the *Muntwyler supra* case the Court stated that a payment is involuntary only when made pursuant to judicial action or some form of administrative seizure, like a levy. *Muntwyler supra* p. 1033. The Muntwyler case involved an individual who was the responsible officer of a corporation. When the corporation could no longer meet its obligations it made a common law assignment of all of its assets to a trustee for the benefit of its creditors. The IRS filed a claim with the trustee and sometime later received partial payment together with instructions on how the pay-

ment was to be applied. In *Muntwyler,* as in the present case, the parties sought to have payments applied to the trust-fund portion of the corporate tax liability so that the 100% penalty assessment against the responsible officer would be partially satisfied. The IRS in the *Muntwyler* case refused to follow the trustee's instructions and the responsible officer then paid the remainder of the 100% penalty. Subsequently, the responsible officer filed suit in district court and sought a refund from the IRS. The Court stated that;

> "the distinction between voluntary and involuntary payment in *Amos* and all the other cases is not made on the basis of the presence of administrative action alone, but rather the presence of court action or administrative action resulting in an actual seizure of money or property as in a levy. No authorities support the proposition that a payment is involuntary whenever an agency takes even the slightest action to collect taxes, such as filing a claim or, as appears to be a logical extension of the Government's position, telephoning or writing the taxpayer to inform him of taxes due."

The payment was deemed to be voluntary and the trustee's designation of how payment was to be credited was upheld. The Government relies on a number of cases to support its position, however, each is distinguishable from the present case. The case of *In re Bulk Sale of Inventory, Etc.,* 631 P.2d 258 (Kan.App.1981) involved a corporation which, pursuant to statute, turned over its assets to an auctioner for sale. After the assets were sold the proceeds were deposited by the auctioner into the Court registry and creditors were instructed to file claims for any amount due.

In *Bulk Sale* the placing of the assets in the auctioner's control and their eventual deposit with the Court effectively stripped the corporation of any control over its assets and more particularly of any control over how or when the IRS would be paid. The facts in *Bulk Sales* are more analogous to a seizure of property as in a levy than is a payment to creditors under a Chapter 11 plan.

The case of *In re Mister Marvins, Inc.,* 48 B.R. 279 (E.D.Mich.1984) is also distinguishable. In *Mister Marvins* a trustee was appointed to replace a corporate debtor in possession. The trustee liquidated the corporate assets and then entered in to an agreement with the Debtor and a creditor regarding distribution of the proceeds. The Bankruptcy Court approved the agreement and without notice to the Government also directed the IRS to apply payments received to the trust fund portion of the outstanding tax liability. The District Court, citing the *Muntwyler* case, reversed the Bankruptcy Court and held,

> "However, the distinction between a voluntary and involuntary payment in *Amos* and all other cases is not made on the basis of enforcement proceedings alone, but rather on the basis of the existence of non existence of some form of court action."

The Mister Marvins case is distinguishable in that the distribution was not made pursuant to a confirmed plan but rather pursuant to court order which authorized the settlement of a claim. The Court in the *Mister Marvins* case was clearly more active than is a court whose only concern is to determine if the proposed plan of reorganization meets the standards set forth in § 1129. In addition, *Mister Marvins* involved a liquidation of the debtor's assets by a trustee and a distribution outside of a confirmed plan. Clearly, Mister Marvins is distinguishable.

Lastly, the IRS relies on *Avildsen v. United States (In re Avildsen Tools and Machines, Inc.,* 40 B.R. 253 (D.N.D.Ill. 1984). In *Avildsen* the Bankruptcy Court entered an order authorizing the sale of the debtor's assets and directing the debtor to pay its outstanding liabilities with the sale proceeds. As specifically stated by the District Court, *Avildsen* involved "both judicial orders and a judicial sale." No such "judicial sale" is involved in the case sub judice.

This Court finds only one case which is factually similar to the present case, *In re*

*Hartley Plumbing Company, Inc.*, 32 B.R. 8 (Bankr.M.D.Ala.1983). In the *Hartley* case the court held that payments made to the IRS pursuant to a confirmed Chapter 11 plan were voluntary. The court likened payments in a Chapter 11 case to those made pursuant to a Chapter 13 plan which payments are clearly voluntary. The court distinguished payments made by a Chapter 7 trustee which are clearly involuntary. See also, *Rollins v. McDaniel, Chorey & Taylor (In re Melton)*, 39 B.R. 762 (Bankr, N.D.Ga.1984)

 Based upon the Muntwyler and Hartley cases and the authorities cited therein this court finds that the mere filing of a claim and confirmation of a plan in the context of a Chapter 11 reorganization case does not amount to court action resulting in actual seizure of money or property. Court involvement in the context of a Chapter 11 reorganization case is not the type which results in seizure of property or money as in a levy. Unlike a taxpayer faced with a government instituted collection proceeding which may lead ultimately to levy upon the taxpayer's assets, a Chapter 11 debtor enjoys great latitude in how and if a plan is proposed and thus how and when the IRS will be paid. § 1129 requires only that a plan provide for payment of pre-petition taxes over a period not to exceed 6 years from the date of assessment in order that it may be confirmed. The debtor propounding a plan has a number of options with respect to treatment of a claim by the IRS and it is the freedom afforded by these options which dictates the conclusion that payments to the IRS pursuant to a confirmed Chapter 11 plan of reorganization are voluntary. Accordingly, it is

ORDERED, ADJUDGED and DE-CREED that the Objection to Confirmation of the United States of America be, and is hereby overruled. Upon the Debtor's Amendment of its First Amended Plan of Reorganization to provide for interest to the IRS at 12% per annum and specifying that the lien of the IRS shall be preserved, a hearing to consider confirmation will be set. The Debtor shall have 10 days from the entry of this Order to file its Amendment to First Amended Plan of Reorganization.