In re John R. HINELINE, Debtor.

John R. HINELINE, Plaintiff,

v.

HOUSEHOLD FINANCE CORP., et al., Defendants.

Bankruptcy No. 83–02265.
Adv. No. 85–0110.

United States Bankruptcy Court,
N.D. Ohio, W.D.

Jan. 27, 1986.

John J. Hunter, Toledo, Ohio, for debtor/plaintiff.

Verne Armstrong, Asst. U.S. Atty., Toledo, Ohio, for U.S. of America, I.R.S.

## OPINION AND ORDER

WALTER J. KRASNIEWSKI, Bankruptcy Judge.

This matter is before the court upon the objection of the defendant United States of America to the Debtor-in-Possession's attempt to direct the allocation of payments from the proceeds of the sale of real property to the tax lien claim of the Internal Revenue Service. The Government argues that any payments made in the course of bankruptcy proceedings are "involuntary"

and that it has the right to apply them as it deems appropriate. The court finds that the voluntary Chapter 11 Debtor's payments are voluntary even in the absence of a Plan and therefore finds the Government's objection should be overruled.

## FACTS

The Debtor-in-Possession (Debtor), John R. Hineline, filed a petition under Chapter 11 of the United States Bankruptcy Code on December 29, 1983.

The Debtor did not file a Plan of Reorganization but instead chose to liquidate the estate. As a result of that decision he commenced this adversary proceeding on April 23, 1985 to sell free and clear of liens the real property described in the Complaint.

The United States, by its attorney, filed its answer on or about May 1, 1985, and stated that it had no objection to the sale of the real property, provided that its liens attached to the proceeds of the sale in the same manner and with the same relative priority as they attached to the property to be sold.

On June 17, 1985, the court entered an order in this adversary proceeding which authorized the Debtor to sell the real property free and clear of liens, and provided that the lien of the defendant, United States of America, attach to the proceeds of the sale.

The Debtor is now attempting to direct the allocation of payments made to the United States from the sale proceeds and the United States objects claiming that it alone has the right to designate how they will be applied.

## DISCUSSION

■ The sole issue in this case is whether the Debtor's payments to the Internal Revenue Service should be characterized as voluntary or involuntary. As a general rule, when a taxpayer makes voluntary payments to the Internal Revenue Service, it has a right to direct the application of payments to whatever type of liability it

chooses. *Muntwyler v. United States,* 703 F.2d 1030, 1032 (7th Cir.1983); *O'Dell v. United States,* 326 F.2d 451, 456 (10th Cir. 1964). However, when payments are involuntary, the policy of the Internal Revenue Service is to allocate the payments as it sees fit. IRS Policy Statement P–S–60, reprinted in CCH Internal Revenue Manual at 1305–15. This rule has been uniformly followed by the Courts, *see, e.g., Muntwyler, supra, United States v. DeBeradinis,* 395 F.Supp. 944, 952 (D.Conn.1975), aff'd mem., 538 F.2d 315 (2d Cir.1976).

The Government's position is "that payments made in the course of bankruptcy proceedings are 'involuntary' and neither the Debtor-in-possession nor the court may direct their application to particular liabilities" (U.S. Memorandum, p. 2). On the other hand, the Debtor contends: that he voluntarily sought relief under Chapter 11 of the Bankruptcy Code; that he voluntarily sold his homestead to pay his creditors; that there was no order of sale, no report of sale nor an order confirming sale and finally that cases administered under the Act are substantially different from those under the Code. Accordingly, the Debtor argues his payment should be described as voluntary.

The Government relies on one of the most frequently cited definitions of involuntary payments, that of the Tax Court in *Amos v. Commissioner,* 47 T.C. 65, 69 (1966) which held: "an involuntary payment of Federal taxes means any payment received by agents of the United States as a result of distraint or levy or from a legal proceeding in which the Government is seeking to collect its delinquent taxes or file a claim therefor." The Government claims that this case falls within the *Amos* definition of involuntariness because the proceeds were received "from a legal proceeding." The Government bases its argument on the assumption that any payment in the course of a bankruptcy is involuntary. The court does not agree.

Decisions from various courts in other circuits have fallen on both sides of the fence. Some seem to find that any payments from a debtor in bankruptcy are automatically involuntary while other courts differentiate between actions arising under Chapters 7, 11 or 13. Most of the cases use the term "judicial order" and "judicial sale" to determine if a payment is voluntary without defining them. Black's Law Dictionary, 762 (5th ed. 1979) offers the following definition of "judicial sale": sales conducted under a judgment, order, or supervision of a court as in a sale under a petition for partition of real estate or an execution. A "judicial sale" is one which must be based upon an order or a decree of a court directing the sale. *Petition of Acchione,* 425 Pa. 23, 227 A.2d 816, 821, 823. A sale in a bankruptcy proceeding is a "judicial sale." *In re Dennis Mitchell Industries, Inc.,* D.C.Pa. 280 F.Supp. 433, 436." While that definition is fine as far as it goes its reference to bankruptcy merely settles questions of title and not the voluntariness of a payment.

■ There is no decision from the Sixth Circuit Court of Appeals which answers the question of whether payments from a bankruptcy case are automatically involuntary. Therefore, the court will look to other circuits for guidance. The court believes that before a payment can be classified as involuntary the court order must make the proposed action compulsory and not subject to the control or will of the debtor. Thus an order merely approving a voluntary sale proposed by the debtor and not objected to by the creditors would not be an "involuntary judicial order." In light of the fact that not all judicial orders constitute involuntary action this court believes it is important to distinguish between cases brought under Chapters 7, 11, or 13 and to look at the nature of the order itself to determine if a payment is in fact involuntary.

The Government has cited several cases in support of its proposition but the case which appears to most strongly support it is *Avildsen v. United States,* 40 B.R. 253 (N.D.Ill.1984). The court agrees with the Debtor that Act cases are distinguishable because of the substantial amount of court

involvement which was required to administer them as compared to the role of the court under the Code. Notwithstanding that *Avildsen* was administered as an Act case (it was later dismissed on December 29, 1980 and refiled the next day to take advantage of provisions in the Bankruptcy Code relating to preferred stockbrokers) it is worthy of discussion because it makes all of the points upon which the Government relies.

In *Avildsen*, pursuant to Chapter 11 of the Bankruptcy Act of 1898, the Bankruptcy Court entered orders approving the sale of the Debtors' assets, confirming the sale of the assets and specifically authorizing the Debtor to pay its outstanding liabilities with the sale proceeds. The District Court found that such action fell within the *Amos* definition of involuntariness in that there were judicial orders and a judicial sale. That court, without discussing the circumstances or nature of the court orders deemed the payments involuntary merely because there was court involvement. However, it is not clear whether the judicial orders in *Avildsen* directed the Debtor to take action against his wishes or whether they simply approved voluntary sales proposed by the Debtor. Thus, *Avildsen* cannot shed much light on this case.

Leaving the narrow territory of determining the voluntariness of payments under the Act *Avildsen, supra* at 255, unqualifiedly stated "several cases have held that payments made by a taxpayer involved in a bankruptcy proceeding are involuntary." Unfortunately, other courts have indiscriminately applied that blanket statement to Code cases completely ignoring the significant differences between Chapters 7, 11 and 13.

*Avildsen* as well as other cases refer to *Muntwyler v. United States,* 703 F.2d 1030 (7th Cir.1983) in support of the proposition that all payments made during a bankruptcy proceeding are involuntary even though *Muntwyler* was not a bankruptcy case. In *Muntwyler* a corporation ceased doing business and entered into a common law, non-judicial assignment of all its assets to a Trustee for the benefit of its creditors. The Trustee was authorized to collect debts payable to the company, sell the company's interests in the assigned assets, and pay the claims of the company's creditors. Among those creditors was the Internal Revenue Service which accepted a check from the Trustee but refused to apply the funds as directed by the Trustee. The Court held that the payment was voluntary and clarified the meaning of that term as follows:

> The distinction between a voluntary and involuntary payment in *Amos* and in all the other cases *is not made on the basis of the presence of court action alone, but rather the presence of court action or administrative action resulting in an active seizure of property or money as in a levy.* No authorities support the proposition that a payment is involuntary whenever an agency takes even the slightest action to collect taxes, such as filing a claim or, as appears to be a logical extension of the government's position, telephoning or writing the taxpayer to inform him of taxes due. (Emphasis added)

*Muntwyler, supra* at 1033.

On the issue of bankruptcy the Court of Appeals in *Muntwyler, supra* at 1033, stated:

> Cases holding that payments made in bankruptcy are involuntary do not support the Government's position because court action is involved. In *First National City Bank v. Kline,* 439 F.Supp. 726, 729 (S.D.N.Y.1977), the court held the payments involuntary, saying that "[w]here, as here, moneys are repaid under judicial order, the court has exclusive authority to apply the funds." Likewise, in *O'Dell v. United States,* 326 F.2d 451, 456 (10th Cir.1964), the court said that a Debtor could not direct application of his money to such debts as he chose "where, as here, the payment is made involuntarily as in an execution or judicial sale." In the instant case there was no levy, judicial order, execution, or judicial sale;

rather, there was a mere filing of a claim.

Even though the Court of Appeals was citing cases determined under the Bankruptcy Act where judicial involvement in the administration of a case was significant *Muntwyler* required a levy, order, execution, or sale to find payments involuntary. In fact, *Muntwyler*, by stating that the presence of court action alone is not enough to automatically make payments involuntary, forces the court to look beyond the label "judicial order" to its content and effect. Absent an order seizing property or compelling the Debtor to act against his will, the court must find his actions voluntary. Thus, according to *Muntwyler*, the mere label "judicial order" is not controlling. Confusion over *Muntwyler* has arisen where that decision has been interepreted as holding that all payments in a bankruptcy case are involuntary as was the case in *In re Mister Marvins, Inc.,* 48 B.R. 279 (E.D.Mich.1984) and *In re Frost,* 47 B.R. 961, 965 (D.Kan.1985).

In *Mister Marvins, supra* at 281, the court referring to the District Court and the Court of Appeals decisions in *Muntwyler* said those courts "suggested that the payment would have been involuntary had it been made under the auspice of a Bankruptcy Court, *Muntwyler,* 703 F.2d at 1033. In fact, the Seventh Circuit, on at least three occasions, noted that payments made in a bankruptcy proceeding are involuntary. Hence, *Muntwyler* supports, rather than contradicts the position of the United States." The District Court appears to have overlooked the languge in *Muntwyler* that stated the mere presence of court action is not enough to make payments involuntary.

The *Mister Marvins* case is distinguishable from the present matter in that there a Trustee was appointed to replace a corporate debtor in possession where here a Trustee has not been appointed. In *Mister Marvins* the Trustee liquidated the corporate assets and ultimately the Trustee entered into an agreement with the Debtor and a creditor regarding the distribution of the proceeds. That agreement was the result of a settlement of numerous items of litigation. The Bankruptcy Court approved the agreement and without notice to the Government also directed the Internal Revenue Service to apply payments received to the Trust Fund portion of the outstanding tax liability. The District Court reversed the Bankruptcy Court because of the "existence of some form of Court action." As previously stated this Court believes the *Muntwyler* case demands more than a finding of "some form of Court action" to declare a payment involuntary.

More recently the District Court in *In re Frost,* 47 B.R. 961 (D.Kan.1985) reversed the Bankruptcy Court which had held that payments made in a Chapter 13 Plan are voluntary because a Chapter 13 petition can only be filed voluntarily. In reversing the Bankruptcy Judge the District Court referring to *Muntwyler* stated, "the court made clear that it was the involvement of the Court and not the type of bankruptcy which makes payments by a Debtor involuntary." *Frost, supra* at 964. The Court continued by declaring "it must be determined whether or not the payment was received through Court or administrative action which resulted in an actual seizure of the property or money." *Frost, supra* at 965. The Court then found the payments in a Chapter 13 Plan involuntary because the Internal Revenue Service filed a claim and that the Plan must comply with the Code. Again, this Court does not believe *Muntwyler* can be expanded so as to obliterate the distinction between cases under Chapters 7, 11 and 13 of the Bankruptcy Code. Furthermore, *Muntwyler, supra* at 1083 held the mere filing of a claim standing alone was not enough to make a subsequent payment involuntary and thus this Court cannot follow the decision in *Frost.*

The government also cites the cases of *In re Obie Elie Wrecking Co., Inc.,* 11 BCD 324 (Bankr.N.D.Ohio 1983) and *In re Hubler Rentals,* 5 BCD 850 (Bankr.E.D.Pa. 1979) in support of its argument that any payment from a bankruptcy case whether

it is under Chapter 7, 11 or 13 is automatically deemed involuntary. Both of those cases were decided under the Bankruptcy Act. In *Obie Elie Wrecking, supra* at 324, the Court held that in a Chapter 7 case "the Trustee is not the agent of the Debtor. 11 U.S.C. § 323(a). He acts as representative of the estate, managing the estate's funds for the benefit of creditors of the estate." Thus payments to the Internal Revenue Service from a Chapter 7 Trustee are involuntary. This Court does not disagree with the opinion of *Obie Elie Wrecking* but it hardly believes that it supports the Government's position.

The other case, *Hubler Rentals*, involved a Debtor who contended that his payment to the Internal Revenue Service should be allocated to tax liens in order of priority and the Internal Revenue Service which claimed the payments were involuntary and that it could apply them at its discretion. The Court held that in the absence of Federal law, state law is controlling and under Pennsylvania law, a creditor is free to allocate payment between debts when the payment is involuntary. *Hubler, supra* at 851, did state that "in the context of a bankruptcy distribution, a dividend paid to a creditor is by nature an involuntary payment." *Hubler* is distinguishable because it was decided under the Act (which was replaced over six years ago by the Code) when the role of the Court was substantially different than it is today. More importantly it is distinguisable because it involved a dividend payable by a Bankruptcy Trustee in a Chapter 7 case whereas in the present matter, which is a Chapter 11 case, no Trustee has been appointed.

■ Several cases have followed the *Muntwyler* requirement that there be a judicial levy, order, execution or sale which results in an actual seizure of property to find payments involuntary. In so doing they have rejected the notion that the presence of judicial action standing alone is sufficient to deem payments involuntary. These cases look to the nature of the case and the order rather than indiscriminately lumping all of them together. *See, e.g., In* 

*re Lifescape,* 54 B.R. 526 (Bankr.D.Colo. 1985); *In re A & B Heating & Air Conditioning, Inc.,* 13 B.C.D. 571 (Bankr.M.D. Fla.1985); *In re the Franklin Press, Inc.,* 13 B.C.D. 572 (Bankr.D.Fla.1985); *St. Louis Freight Lines, Inc.,* 12 B.C.D. 647 (Bankr.E.D.Mich.1984); *In re Office Dynamics, Inc.,* 39 B.R. 760 (Bankr.N.D.Ga. 1984); *In re Hartley Plumbing Company, Inc.,* 32 B.R. 8 (Bankr.M.D.Fla.1983). The Court finds the reasoning in these cases persuasive and in doing so it rejects the Government's claim that any payment from a debtor in bankruptcy is involuntary.

Noting the distinctions between cases where a Trustee is appointed and those where the Debtor is in control is the case of *In re Hartley Plumbing Company, Inc.,* 32 B.R. 8 (Bankr.M.D.Ala.1983). The court in *Hartley* conluded that payments made pursuant to a Chapter 11 plan should be classified as voluntary. The court in *Hartley* stated "the present case is a voluntary Chapter 11 case and the Debtor could, as a matter of right, have the case converted to a Chapter 7 at any time or could have had the case dismissed unless it was shown that a dismissal would be prejudicial to creditors." *Hartley, supra* at 8. The present case is also a voluntary Chapter 11 although the Debtor has not proposed a plan.

Two recently decided cases have followed the *Hartley* rationale and decided that the confirmation of a Chapter 11 Plan does not amount to court action resulting in actual seizure of money or property and payments made under the Plan are deemed voluntary. *A & B Heating & Air Conditioning, Inc.,* 13 B.C.D. 571 (Bankr.M.D.Fla.1985); *In re Franklin Press, Inc.,* 13 B.C.D. 572 (Bankr.D.Fla.1985). *See also In re St. Louis Freight Lines, Inc.,* 12 B.C.D. 647 (Bankr.E.D.Mich.1984) (declaring Internal Revenue Service bound by terms of confirmed plan.).

■ Though all of the aforementioned cases support the rejection of the Government's broad proposition that all payments by a Debtor in bankruptcy are involuntary none of them dealt with a voluntary liqui-

dating Chapter 11 case as is the case before the court. However, it is no longer an argument that Chapter 11 may not be used as a liquidating vehicle and in fact such an assertion has not been made by the defendants in this case but the Government does note in its memorandum that the Debtor has not filed a Plan. Absence of a Plan does not prohibit sales under § 363(b). *See, e.g. In re Lionel Corp.*, 722 F.2d 1063 (2d Cir.1983), *In re W.H.E.T, Inc.*, 12 B.R. 743 (Bankr.D.Mass.1981). With § 1121(c), which explicitly permits any party in interest to file a Plan if "the Debtor has not filed a Plan that has been accepted before 180 days after the date of the order for relief," the complaint that the Debtor has not filed a Plan is a weak one indeed. No one in this case has suggested a Plan and the fact that this is a liquidating Chapter 11 without a Plan does not affect the "voluntariness" of the payments to the Internal Revenue Service.

The present case is a voluntary Chapter 11 case which the Debtor has the right to convert or dismiss unless it would be prejudicial to creditors. Furthermore, the court's approval of an uncontested sale of property voluntarily proposed by the Debtor cannot be construed as a court order compelling the sale or surrender of property against the Debtor's will as in a levy or execution. Therefore, the Debtor's actions having the attributes of voluntariness, the court finds that the Internal Revenue Service must apply the payments in the manner directed by the Debtor, and its objection should be overruled.

In light of the foregoing it is hereby

ORDERED that the objection of the United States of America be, and it hereby is, overruled. It is further

ORDERED that the Debtor be, and he hereby is, authorized to allocate the manner in which the tax lien of the United States of America shall be paid and satisfied. It is further

ORDERED that the United States of America shall accept the payments as directed by the Debtor in satisfaction of its lien.