## In re TECHNICAL KNOCKOUT GRAPHICS, INC., Debtor.

BAP No. CC 86–1255 MoMeV.
Bankruptcy No. LA 84–09114–(JA)BR.

United States Bankruptcy Appellate Panels of the Ninth Circuit.

Argued and Submitted July 23, 1986.
Decided Dec. 19, 1986.

**464**

Edward M. Robbins, Jr., Asst. U.S. Atty., Los Angeles, Cal., for appellant.

Philip D. Dapeer, Los Angeles, Cal., for appellee.

Before MOOREMAN, MEYERS and VOLINN, Bankruptcy Judges.

## OPINION

ROBERT G. MOOREMAN, Bankruptcy Judge:

This appeal arises from an order by the bankruptcy court designating the allocation of payments by the debtor to the U.S. on behalf of the Internal Revenue Service ("IRS"), in order to partially satisfy outstanding tax liabilities. The IRS challenges the order on the contention that payments made while in bankruptcy require court action and approval, resulting in the payments being construed as involuntary payments. IRS policies have adopted common law principles which provide for a distinction between voluntary and involuntary payments. A taxpayer making a voluntary payment to the IRS has the right to designate the allocation of those funds to reduce any liability outstanding, while an involuntary payment may be allocated by the IRS in regard to its policies and procedures. *See Muntwyler v. United States,* 703 F.2d 1030, 1032

(7th Cir.1983); *O'Dell v. United States,* 326 F.2d 451, 456 (10th Cir.1964).

Notwithstanding the existence of authority to the contrary, this Court will affirm the order of the bankruptcy court and its allocation of the amounts paid.

## ISSUE PRESENTED

Did the bankruptcy court err by designating the allocation of a payment to the IRS?

## FACTS

The debtor in the instant case filed for bankruptcy protection under Chapter 11 on May 3, 1984. The operation of the entity has been continued by the debtor in possession. On August 16, 1984, the IRS filed a proof of claim for pre-petition taxes in the amount of $491,634.19. The majority of this amount owing consisted of unpaid employment taxes regarding wages of the debtor's employees.

In September, 1985, the debtor filed a motion before the bankruptcy court, requesting that it be allowed to make payments to the IRS as well as direct the allocation of those payments. After a hearing on this matter, the bankruptcy court granted the motion. Appellant filed a timely notice of appeal.

## STANDARD OF REVIEW

In reviewing decisions by the bankruptcy court, this Court will overturn findings of fact only upon a showing that they are clearly erroneous, *see* Bankruptcy Rule 8013, while conclusions of law will be reviewed *de novo. In re American Mariner Industries, Inc.,* 734 F.2d 426, 429 (9th Cir.1984); *In re Ellsworth,* 722 F.2d 1448 (9th Cir.1984). There is no dispute concerning the facts herein; accordingly, our review is *de novo.*

## DISCUSSION

The IRS contends that the bankruptcy court erred in allowing the debtor to designate the allocation of its payments on prepetition tax obligations. It argues that the

payments made in bankruptcy proceedings are involuntary, thereby precluding the debtor from designating the allocation of the funds.

In the present case, the tax liability which exists arose from the non-payment of taxes which were to have been withheld from employees' wages. As set forth in 26 U.S.C. Section 3402(a), each employer is required to deduct and withhold a portion of those wages on behalf of the employee. Further, pursuant to Section 7501, those amounts withheld by the employer "shall be held to be a special fund in trust for the United States." *Muntwyler v. United States*, 703 F.2d 1030, 1032 (7th Cir.1983).

Liability for these "trust funds" is imposed first upon the employer, pursuant to Sections 3102(a) and 3403. In addition to this liability to pay over the withheld "trust funds" to the IRS, the Tax Code also provides for a penalty for noncompliance with the provisions. Failure to provide these "trust funds" to the IRS can result in a penalty, imposed as a personal liability upon the person required to withhold such funds, in an amount equal to that amount not collected by the IRS, *see* 26 U.S.C. Section 6672, known as the "100–percent penalty." The personal liability of the employer and the "100–percent penalty" are to help ensure payment of the taxes withheld from employees' wages.

In the present case, the bulk of the taxes owing to the IRS are "trust funds." By designating the allocation of payments to the IRS, the debtor company is able to reduce the personal liability of the corporate member responsible for maintaining the "trust funds." Conversely, the IRS desires to allocate the payments to non-trust fund liabilities, leaving in place the personal liability of the corporate member, as well as the "100–percent penalty."

Under the relevant IRS policy statement, the ability to allocate the distribution of payments to the IRS depends upon the characterization of the payment as either voluntary or involuntary. As mentioned above, this dichotomy arose from common law principles regarding the payment of debts. *In re Frost*, 47 B.R. 961, 964 (D.Kan.1985); *See also Muntwyler v. United States*, 703 F.2d 1030, 1032 (7th Cir. 1983); *O'Dell v. United States*, 326 F.2d 451, 456 (10th Cir.1964). The tax code contains no provisions regarding the allocation of voluntary payments.

Conversely, if the payment is involuntary, the IRS retains the right to allocate the funds among the existing liabilities. *Muntwyler, supra;* IRS Policy Statement P–5–60, reprinted in CCH Internal Revenue Manual at 1305–15. While the IRS policy statements deal with involuntary payments, there is no tax code provision regarding this subject.

The determination of voluntary versus involuntary is not an easy one, as many courts have struggled to find a specific definition of these terms. *See* e.g. *Muntwyler, supra; In re Hineline*, 57 B.R. 248 (Bankr.Ohio 1986); *In re A & B Heating & Air Conditioning, Inc.*, 53 B.R. 54 (Bankr.Fla.1985). In *Amos v. Commissioner*, 47 T.C. 65 (1966), the court set forth the following definition:

> An involuntary payment of Federal taxes means any payment received by agents of the United States as a result of distraint or levy of from a legal proceeding in which the Government is seeking to collect its delinquent taxes or file a claim therefor.

In *Muntwyler*, the court found that a payment did not become involuntary "whenever an agency takes even the slightest action to collect taxes, such as filing a claim...." *Id.*, at 1033. The court looked to the policy statements of the IRS in regard to a provision in the tax code, 26 U.S.C. Section 6672, which provide as follows: "The taxpayer, of course, has no right of designation in the case of collections resulting from enforced collection measures." Based upon this policy statement, the court found that merely filing a claim did not amount to "enforced collection measures" sufficient to construe the payments as involuntary.

Difficulty arises, however, when viewing transactions which occur in bankruptcy proceedings. While the reorganization includes legal proceedings, the actions of the debtor, at least in a Chapter 11 matter, are mainly voluntary. Several courts have addressed this problem and have reached different results.

The court in *In re Hartley Plumbing Company, Inc.*, 32 B.R. 8 (Bankr.Ala.1983), was faced with a situation similar to that presented herein, where the payments were voluntarily made by the debtor. The court found that due to the fact that the debtor could convert the case from a Chapter 7 to a Chapter 11 as a matter of right and could dismiss it if there was no showing of prejudice, the payments made to the IRS were voluntary, thereby entitling the debtor the right to designate the allocation of the payments.

Further, where the bankruptcy court has approved a Chapter 11 plan which included such payments to the IRS, at least three courts have found the payments to be voluntary. *See In re Lifescape, Inc.*, 54 B.R. 526 (Bankr.Colo.1985); *In re A & B Heating & Air Conditioning*, 53 B.R. 54, 13 BCD 571 (Bankr.Fla.1985); and *In re Franklin Press, Inc.*, 52 B.R. 151 (Bankr. Fla.1985); *Contra, In re Frost*, 47 B.R. 961 (D.Kan.1985); *Avildsen v. United States*, 40 B.R. 253 (N.D.Ill.1984), *aff'd on other grounds*, 974 F.2d 1248 (7th Cir.1986)[1].

Although the discussion concerning the characterization of the payments may be controlling in certain circumstances, it does not directly address the concern present in a bankruptcy matter such as the case at bar. The issue presented herein is *not* whether the debtor may, on its own, allocate the funds to be paid to the IRS. Instead, this Court must determine whether the bankruptcy court acted within its power in making such an allocation, as the transfer took place pursuant to court order.

Pursuant to Section 505 of the Bankruptcy Code (11 U.S.C.), the bankruptcy court must determine the amount of tax and penalties, if any, owing from the debtor and/or bankruptcy estate. Included in this determination is the allocation of funds paid to the IRS to satisfy the various outstanding tax liabilities which may exist. "Where, as here, moneys are repaid under judicial order, the court has the exclusive authority to apply the funds." *First National City Bank v. Kline*, 439 F.Supp. 726, 729 (S.D.N.Y.1977) (as cited in *Muntwyler, supra*, at 1033.) In the present case, there is no dispute that the bankruptcy court ordered the contested allocation, albeit at the debtor's request.

■ Accordingly, the issue before this Court is whether the bankruptcy court abused its discretion in allocating the payment to reduce the "trust fund" portion of the tax liability. There is no evidence in the record before this Court to support a conclusion that the bankruptcy court's ruling should be disturbed. While the voluntary-involuntary dichotomy can be utilized in determining the proper allocation of the payment, it is not controlling upon the bankruptcy court's decision. A holding to the contrary would allow IRS policy statements to limit the exercise of the bankruptcy court's equitable jurisdiction, a result inconsistent with the history and intent of bankruptcy legislation. *See e.g. Pepper v. Litton*, 308 U.S. 295, 60 S.Ct. 238, 84 L.Ed. 281 (1939).

■ On the record before it and after a full hearing on the dispute, the bankruptcy court in the present case determined that an equitable allocation would result from directing all of the payment to reduce the "trust fund" portion of the tax liability. Such a determination was clearly within its

---

**1.** Although the district court in *Avildsen* held that payments made during the course of the bankruptcy proceedings were involuntary, the Seventh Circuit did not reach this issue. *See Id.*, at p. 1252. The Court of Appeals limited their holding to the fact that the debtor and the IRS had entered into a settlement agreement for all outstanding liabilities, which the debtor subsequently failed to meet. Based upon this breach of the agreement, the Court found that the IRS was entitled to ignore the limited endorsement on the payment received from the debtor, thereby allowing the IRS to allocate the payment pursuant to its policies and regulations.

authority pursuant to 11 U.S.C. Section 505. *See also First National City Bank v. Kline, supra.* Absent evidence which indicates that the court abused its power in making the determination, this Court will not disturb such a decision. Accordingly, the order of the bankruptcy court is hereby AFFIRMED.

SIDNEY C. VOLINN, Bankruptcy Judge, dissenting:

I am constrained to respectfully dissent. Following is a brief summary of the facts, contentions and issues before the trial court.

The corporate debtor was obligated for some $490,000 in taxes, the greater part of which was for unemployment or trust fund taxes for which the corporate president is personally liable. It appears that some $13,000 of the tax debt is attributable to corporate or non-trust fund taxes which cannot be levied on corporate officers. The corporation during the course of the bankruptcy has been earning substantial profits which have been deposited into a special account. The debtor, on notice to the Internal Revenue Service, applied for an order of the court authorizing payment, prior to the filing of a plan, on the prepetition taxes. The debtor contends that the payment is voluntary rather than involuntary as a consequence of which, according to law, the debtor may require that the United States apply the taxes to that portion of the debt for which the corporate president is personally liable, as distinguished from that portion of the debt for which he is not chargeable. The government, wishing to preserve the backup liability of the corporate officer, contends that the payment is involuntary and therefore the government may discretionarily apply the payment to the non-trust fund debt. The debtor had accumulated, in a savings account, at the time this dispute began on August 20, 1985, funds of some $197,000.

The order of the court below provided that the

> debtor in possession is permitted to pay to the Internal Revenue Service for and on account of pre-filing employment taxes due and owing by the debtor, such amounts in the discretion of the debtor in possession by way of reduction of such pre-filing indebtedness and debtor in possession shall be permitted to designate such payment or payments from time to time as it so desires, by way of application to the trust fund portion of the employment taxes due, or any other portion of the employment taxes due. The Internal Revenue Service shall accept such payments made by debtor in possession from time to time and shall accept and be bound by the designation by debtor in possession as to how such payments are to applied.

The Internal Revenue Service, except for the first payment, has refused to accept payments tendered by debtor on account of the trust fund employment taxes due.

The debtor in applying for the foregoing order stated that it proposed to make an interim payment of $25,000 to the Internal Revenue Service for and on account of the trust fund portion of the employment taxes due and owing.

## DISCUSSION

### I.

The debtor contends that pending confirmation of a plan, payment on claims may be made at its discretion or voluntarily. This assumption disregards the nature of a bankruptcy proceeding and the statutory constraints imposed on a debtor by the filing of a petition.

The funds acquired by the debtor after bankruptcy are property of the estate. 11 U.S.C. § 541(a)(7) defines property of the estate as "any interest in property that the estate acquires after commencement of the case." This would apply to the savings account maintained by the debtor-in-possession from the profits of his business operation.

11 U.S.C. § 1101 defines "debtor-in-possession" as the debtor except when a trustee has been appointed and qualified. Section 1107 sets forth the rights, powers and

duties of the debtor-in-possession. It states:

> Subject to any limitations on a trustee serving in a case under this chapter, and to such limitations or conditions as the court prescribes, a debtor in possession shall have all the rights, other than the right to compensation ... and powers, and shall perform all the functions and duties ... of a trustee serving in a case under this chapter.

The legislative history comments:

> This section places a debtor-in-possession in the shoes of a trustee *in every way*. The debtor is given the rights and powers of a Chapter 11 trustee. He is required to perform the functions *and duties* of a Chapter 11 trustee (except the investigative duties). He is also subject to any limitations on a Chapter 11 trustee, and to such other limitations and conditions as the court prescribes. See *Wolf v. Weinstein*, 372 U.S. 633, 649–650 (1963). (emph. supp.)

Thus, the debtor-in-possession is a fiduciary and an officer of the court, a trustee entrusted with dealing with the property of the estate *for the benefit of its creditors*, pursuant to Code provisions. A trustee does not have untrammeled discretion to expend or direct application of estate funds.

## II.

Here the United States had been enjoined by virtue of the automatic stay, 11 U.S.C. § 362, from pursuing its claim against the debtor.

The IRS claim is for taxes withheld from employees' wages provided for by 26 U.S.C. §§ 3402, 3403 and the collection of the employees' portion of social security taxes provided for in § 3102(a).

26 U.S.C. § 7501 provides that withheld taxes "shall be a special fund in trust for the United States." In order to ensure that these funds will be collected and held in trust, Congress sought to insure against loss of these funds by imposing personal liability on those who exercise control over the financial affairs of the business entity which is required to collect and pay the taxes withheld from third parties. The statutory provision imposing such personal liability is 26 U.S.C. § 6672. Thus, appellant contends that the debtor's president, Steve Grover, is liable for the 100 percent penalty. (Brief, pages 11–12.)

The IRS was and is free to pursue such other party as might be liable on the claim; *see In re Casgul of Nevada, Inc.*, 22 B.R. 65 (9th Cir. BAP 1982), which held that the corporate debtor was not entitled to an injunction restraining a creditor from pursuing a corporate officer-guarantor.

Here the debtor, now a fiduciary for all creditors, proposes to pay such debt by directing estate funds, without reference to a plan or overall payment of claims, to a claim where the corporate officer is personally liable. The propriety of such expenditure from estate funds under these circumstances is questionable. Because the expenditure was made during a preliminary and, as yet undefined phase of the bankruptcy proceedings, an application to the court for authority to make accelerated payments, and an order permitting this unusual procedure was considered advisable if not necessary.

## III.

There are a number of well-reasoned cases holding a payment of the kind made here to be involuntary. *See Monday v. U.S.*, 342 F.Supp. 1271, 1275 (E.D.Wis. 1972), *aff'd* 478 F.2d 1404 (7th Cir.1973), which held that money paid by a debtor in a bankruptcy proceeding to satisfy its tax liabilities was paid involuntarily, and thus the bankruptcy referee had no authority to direct the government to apply the money to any particular debt. Other cases in point are *In re Mister Marvins, Inc.*, 48 B.R. 279 (E.D.Mich.1984); *In re Hubler Rentals*, 79–2 U.S.T.C. ¶ 9621 (E.D.Pa. Sept. 27, 1979) [Available on WESTLAW, DCTU database]; *First National City Bank v. Kline, supra; In re Vincent-McCall Co.*, 68–2 U.S.T.C. ¶ 9591 (E.D.Wis. May 10, 1968); *In re Obie Elie Wrecking*

*Inc.*, 35 B.R. 114 (Bankr.N.D.Ohio 1983); *In re State Mechanical, Inc.*, 84–2 U.S.T.C. ¶ 9880 (Bankr.W.D.Wash.1984); *In re Tam Specialty Co., Inc.*, 57 B.R. 37, 85–2 U.S. T.C. ¶ 9758 (N.D.Cal.1985), and *In re Frost*, 47 B.R. 961 (D.Kan.1985).

*In the Matter of Mr. Marvins, Inc.*, *supra*, states at page 281:

> Marvins' claims in bankruptcy constitute property of the estate. 11 U.S.C. § 541. The distribution of the property of the estate is determined by the priority which has been established in the Bankruptcy Code, and payments to creditors, including the United States cannot be deemed to be voluntary. Bankr.L.Ed. Summary § 1.1, 1.21, 1.65. Furthermore, it is difficult to understand how the payment could have been deemed to have been voluntary when the trustee determined that a court order was necessary in order to authorize the payment.

*See also Avildsen v. United States*, 40 B.R. 253 (N.D.Ill.1984), *aff'd on other grounds*, 794 F.2d 1248 (7th Cir.1986).

The district court in *Avildsen* held that the payments made to the IRS during the course of the bankruptcy proceedings were involuntary and therefore subject to application for trust fund taxes. The latter issue was not reached by the Seventh Circuit because it held that the IRS was entitled to allocate the payment pursuant to its policies and regulations based on the debtor and the IRS having reached a settlement agreement. However, the opinion noted the dicta in *Muntwyler*, 703 F.2d at 1034 n. 2 stating "[t]he government might have been correct in its claim if the corporation had been in bankruptcy, which it was not." The concurring opinion in *Avildsen* simply stated that the holding of the district court that the payment was involuntary should be affirmed.

Appellee relies on certain rulings the other way: e.g. *A & B Heating and Air Conditioning*, 53 B.R. 54, 13 BCD 571 (Bankr.M.D.Fla.1985); *In re Franklin Press*, 52 B.R. 151 (Bankr.D.Fla.1985), and *In re Lifescape Inc.*, 54 B.R. 526 (Bankr.D. Colo.1985). In two of the cases cited by the debtor, *A & B Heating and Air Conditioning* and *Lifescape*, the issue involving applications of tax payments to trust fund taxes was heard and decided in the context of confirming a plan, on notice to all creditors, rather than with no notice or limited notice to the IRS. In the third case, *In re Franklin Press*, there was also a confirmation hearing, on notice, which involved the infusion of new capital by a third party. Arguably, this case is distinguishable because funds of the estate were not involved.

In any event, none of these cases involved situations such as the instant one. Here, the debtor-in-possession proposes, without a plan and without reference to the debtor's financial context, to expend estate funds to pay a single creditor with the express purpose of discharging the parallel liability of a third party, the corporate president, for the same debt.

### IV.

Debtors who file under *any* chapter of the bankruptcy code have few, if any, options. As a practical matter, they file bankruptcy because it is a last chance for a relatively ordered financial liquidation or rehabilitation rather than the out-of-control financial debacle facing them on the eve of bankruptcy. The simple filing of the bankruptcy petition enjoins secured and unsecured creditors from further pursuing the debtor without the intervention of the court. Those subjected to the restraint of injunction are thereby involved with a court and its order. Secured creditors must file an application or motion to terminate the stay before gaining access to their security. Creditors in order to participate in the distribution of assets, whether in the course of liquidation or under plan, must file claims. Thus the district court in *Avildsen*, 40 B.R. at 256 stated:

> [T]he Seventh Circuit made it abundantly clear that it was the involvement of a court—not the type of bankruptcy— which makes payments by a debtor in bankruptcy involuntary. *Muntwyler*, 703 F.2d at 1033. Indeed, regardless of

whether the debtor is involved in a liquidating bankruptcy or a reorganization, the IRS is precluded from attempting any collection other than by filing a claim in the judicial proceeding. Thus, the fact that this case deals with a reorganization rather than a liquidating bankruptcy does not change the involuntary nature of Avildsen's payments.

In exchange for these basic benefits, the debtor must undergo various constraints which curtail and limit discretionary action on the debtor's part. To begin with, the debtor's property, by virtue of Section 541, becomes part of a bankruptcy estate and the debtor's actions are subject to the test of what is in the best interests of creditors. Further, the debtor-in-possession is subject to order of the court when it takes any significant action with respect to disposition of estate property, particularly where such disposition is out of the ordinary course of business, as in the case now before us. Such action may be taken only on proper notice and a hearing before the court. *See* 11 U.S.C. § 363(c)(1).

The debtor who files under Chapter 11 must ultimately file a disclosure statement which is subject to review by the creditors and requires approval of the court. Thereafter, the plan itself is subject to approval of the court and must be found fair, equitable and feasible. The court must find, pursuant to 11 U.S.C. § 1129(a)(7), that each holder of a claim or interest of a class has accepted the plan or will receive or retain under the plan on account of such claim or interest property of a value as of the effective date of the claim, that is not less than the amount that such holder would still receive or retain if the debtor were liquidated under Chapter 7.

Section 1121 provides that if the debtor does not file a plan within 120 days after the date of the order for relief, any party in interest may do so. Section 1112 relates to a conversion or dismissal. It provides that a debtor may convert a case from Chapter 11 to Chapter 7. This section provides for conversion or dismissal "whichever is in the best interest of creditors and the estate;

for cause including loss to or diminution of the estate and absence of a reasonable likelihood of rehabilitation; inability to effectuate a plan; unreasonable delay prejudicial to creditors, failure to propose a plan within any time fixed by the court ... (and other causes)."

The foregoing causes for conversion or dismissal demonstrate that the basic criteria for conversion to a Chapter 7 or dismissal are the debtor's violation of or inability to comply with the Code's constraints and the interest of creditors. Thus, where the debtor is unable to come forward with a plan which would provide his creditors with at least the equivalent of what would be received in a Chapter 7 and where there are assets, conversion will be the likely result. In this case, if the debtor were unable to come forward with a plan, the likelihood of a dismissal with the debtor retaining a savings account of the amount indicated, is improbable.

## V.

The purpose of discussing the foregoing Code provisions is to demonstrate that the debtor as a fiduciary is not free to serve its own interests, or those of its officers, without regard to statutory constraints. Likewise, bankruptcy courts, while courts of equity, must follow the law. The general rule is that:

> a bankruptcy court possesses only the jurisdiction and powers expressly or by necessary implication conferred by Congress.... Although a bankruptcy court is essentially a court of equity, ... its broad equitable powers may only be exercised in a manner which is consistent with the provisions of the Code.

*Johnson v. First Nat'l Bank of Montevideo,* 719 F.2d 270, 273 (8th Cir.1983), *cert. denied,* 465 U.S. 1012, 104 S.Ct. 1015, 79 L.Ed.2d 245 (1984). *See also Matter of Chicago, Milwaukee, St. Paul & Pac. Railroad Co.,* 791 F.2d 524, 528 (7th Cir.1986); *In re Pirsig Farms, Inc.,* 46 B.R. 237, 240 (D.Minn.1985).

## CONCLUSION

Once a debtor crosses the Rubicon and files bankruptcy, the debtor's discretion is limited by and subject to the provisions of the Bankruptcy Code. Fundamentally, the debtor's argument is directed more to the propriety of the payment rather than its character or quality. While propriety of the payment on the record before us is questionable, there is no doubt as to its involuntary character.

The order should be reversed.