**In the Matter of MISTER MARVINS, INC., Debtor.**

**Civ. A. No. 83–1289.**

United States District Court, E.D. Michigan, S.D.

Feb. 9, 1984.

Karl Overman, Asst. U.S. Atty., Detroit, Mich., Allen R. Mass, Trial Atty., Tax Div., Washington, D.C., for U.S.

Allan W. Gilbert, Detroit, Mich., for trustee.

MEMORANDUM OPINION

JULIAN ABELE COOK, Jr., District Judge.

The present matter is before this Court on appeal by the United States from the United States Bankruptcy Court for the Eastern District of Michigan. On March 29, 1983, the Bankruptcy Court denied a motion by the United States to vacate an order that had previously authorized the bankruptcy trustee to designate the manner in which his payment of certain taxes on behalf of the Mister Marvins, Inc. Estate [Marvins] was to be applied by the Internal Revenue Service.

On December 29, 1980, Marvins filed a Petition for Reorganization under Chapter 11 of the Bankruptcy Code. Marvins continued to operate the business for almost a year as a debtor in possession until it ran into financial difficulties. Proceedings were then instituted by two trade suppliers (to wit, Leyton's, Inc. [Leyton's] and Jilar, Inc.) for the removal of the debtor in possession and for the appointment of a trustee. On December 18, 1981, the Bankruptcy Court appointed Fred J. Dery to serve as trustee. After liquidation of the inventory had been completed, all of the Marvins' assets were sold through an auction sale.

Ultimately, Marvins, Leyton's and the trustee reached an agreement regarding the distribution of the proceeds. In this regard, the Bankruptcy Court, on September 17, 1982, entered its "Order Authorizing Settlement of Administrative Claim, Payment of Trust Fund Internal Revenue Service Taxes" which directed the trustee to designate that the tax payment be applied to the trust fund portion of the withholding taxes due the Internal Revenue Service. Inasmuch as (1) the United States was not notified that the subject order would be submitted to the Court for signing, and (2) the Court did not schedule the matter for a hearing, the Government did not have an opportunity to object to entry of the order. Thereafter, the United States moved to vacate the order because the order designated how the payment was to be applied. This motion was denied in an order, dated March 29, 1983.

■ The Internal Revenue Code directs employers to deduct and withhold a tax upon wages, 26 U.S.C. § 3401(a). These taxes are deemed to be held in trust for the United States, 26 U.S.C. § 7501(a) and, accordingly, every person who is required to withhold such taxes (including an officer of the corporation, such as the taxpayer here) is personally liable for the full amount of any withholding tax that is not paid, 26 U.S.C. §§ 6671(b) and 6672. On the other hand, an entity, like Marvins, is not personally liable for unpaid non-trust fund taxes. Here, Marvins sought to extinguish its personal liability for unpaid trust fund taxes by having the Bankruptcy Court direct that the payments be credited against the trust fund liability.

As a general rule, a delinquent taxpayer who makes a voluntary payment to the Internal Revenue Service may direct the application of the payments as he/she/it sees fit, *O'Dell v. United States*, 326 F.2d 451, 456 (10th Cir.1964). However, in the absence of a particular allocation by the taxpayer of a voluntary payment, the United States may apply the payment according to its own policy. *Liddon v. United States*, 448 F.2d 509, 513 (5th Cir.1971), *cert. denied*, 406 U.S. 918, 92 S.Ct. 1769, 32 L.Ed.2d 117 (1972); *Pacific National Insurance Co. v. United States*, 422 F.2d 26, 33 (9th Cir.), *cert. denied*, 398 U.S. 937, 90 S.Ct. 1838, 26 L.Ed.2d 269 (1970).

■ When a payment is involuntary, the policy of the Internal Revenue Service is to allocate the payment as it sees fit, Policy Statement P-5-60, *reprinted in Internal Revenue Manual* (CCH) 1305-15. This rule has been uniformly followed by the Courts. *See, e.g., United States v. DeBeradinis*, 395 F.Supp. 944, 952 (D.Conn.1975), *aff'd mem.*, 538 F.2d 315 (2d Cir.1976).

The Government contends that a payment due to the United States in a bankruptcy proceeding is not a voluntary payment, and neither the Court nor the trustee can direct the manner in which the pay-

ment is to be allocated. Marvins, in response, argues that the payment, which had been made after an arm's length transaction, was fully voluntary.

A starting point for determining whether the payment was voluntary is the debtor's cited definition of involuntary payment in *Amos v. Commissioner*, 47 T.C. 65, 69 (1966): "An involuntary payment of Federal taxes means any payment received by agents of the United States as a result of distraint or levy or from a legal proceeding in which the government is seeking to collect its delinquent taxes or file a claim therefor." Marvins contends that this case falls outside of the Amos definition of involuntariness because the Government must take some kind of enforcement proceeding (to wit, a levy, actual seizure or judicial sale).

However, the distinction between a voluntary and involuntary payment in *Amos* and all other cases is not made on the basis of enforcement proceedings alone, but rather on the basis of the existence or non-existence of some form of court action, *Muntwyler v. United States*, 83–1, U.S. T.C., para. 9275, 703 F.2d 1030 (7th Cir. 1983).

In *Muntwyler,* a corporation which was delinquent in paying Federal withholding taxes, entered into a common law, nonjudicial assignment for the benefit of creditors. The Internal Revenue Service failed to serve a levy upon the assignee but merely filed a claim with the assignee. The assignee later sent money to the Internal Revenue Service, with a directive that the funds should be applied to the trust fund portions of the unpaid taxes. The Internal Revenue Service accepted the checks but initially applied the funds to the non trust fund portions of the unpaid taxes. Although the Seventh Circuit ruled that the payment was voluntary, the *Muntwyler* decision supports the Government's argument in the present case. The thrust of the opinions in both the District Court and the Seventh Circuit was that, in the context of an assignment for the benefit of creditors (unlike that of a bankruptcy proceed-

ing), there was no judicial intervention. Both Courts specifically declined to analogize the nonjudicial assignment for the benefit of creditors with a judicial bankruptcy proceeding, and suggested that the payment would have been involuntary had it been made under the auspice of a bankruptcy court, *Muntwyler*, 703 F.2d at 1033. In fact, the Seventh Circuit, on at least three occasions, noted that payments made in a bankruptcy proceeding are involuntary. Hence, *Muntwyler* supports, rather than contradicts, the position of the United States. This is especially true in light of the Seventh Circuit's earlier decision in *Monday v. United States*, 73–2, U.S.T.C., para. 9589 (7th Cir.1973) where it stated:

> [The taxpayer] objects to the manner in which the Government applied this money received in the bankruptcy proceeding to satisfy its tax claims. But the retiree did not have the authority to direct the Government to apply the involuntarily paid money in any particular manner of satisfaction of its valid claim. *O'Dell v. United States*, 326 F.2d 451, 456 (10th Cir.1964).

Marvins incorrectly states that the payment in question was voluntary. As the Government noted, the source of the tax payment (according to Marvins' Response to Memorandum of the United States) was the result of a settlement of "numerous items of litigation." Marvins' claims in bankruptcy constituted property of the estate, 11 U.S.C. § 541. The distribution of property of the estate is determined by the priority which has been established in the Bankruptcy Code, and payments to creditors, including the United States, cannot be deemed to be voluntary, Bank.L.Ed. Summary § 1.1, 1.21, 1.65. Furthermore, it is difficult to understand how the payment could have been deemed to have been voluntary when the trustee determined that a Court Order was necessary in order to authorize the payment.

For the foregoing reasons, the judgment of the Bankruptcy Court ordering the Internal Revenue Service to apply the pay-

ment to the trust fund portion of Marvins' account is reversed.

SO ORDERED.