**In re Gordon F. GIRARD, Debtor.**

**Gordon F. GIRARD, Plaintiff,**

**v.**

**UNITED STATES of America, Defendant.**

**Bankruptcy No. 84–09198.**
**Adv. No. 84–9059.**

United States Bankruptcy Court,
E.D. Michigan, N.D.

Nov. 22, 1985.

Jack A. Weinstein, Saginaw, Mich., for plaintiff.

Michael J. Hluchaniuk, Asst. U.S. Atty., Bay City, Mich., R. Todd Luoma, Trial Atty., Tax Div., U.S. Dept. of Justice, Washington, D.C., for defendant.

## MEMORANDUM OPINION

ARTHUR J. SPECTOR, Bankruptcy Judge.

There are no material disputes as to the facts involved in this case; the statement of facts comes from the government's brief in support of its motion for summary judgment, which the plaintiff adopted in his brief in support of his motion for summary judgment. The debtor and his wife did not file their federal income tax returns for the years 1969 through 1974 until December 15, 1977. Between February 13, 1978 and February 27, 1978, the Internal Revenue Service (IRS) assessed the debtor and his wife for unpaid taxes during those years and properly notified the debtors and de-

manded payment therefrom. The debtor and his wife were also assessed for unpaid taxes for the years of 1978, 1979 and 1980; the deficiencies for those taxes were assessed in 1979, 1980 and 1982 respectively.

On May 30, 1978 and on June 14, 1978, the IRS filed notices of federal tax liens with the Register of Deeds for Ogemaw County, Michigan for the assessed federal income tax liabilities of the Girards for the years 1969 through 1974. On April 7, 1980, the IRS filed another notice of tax lien with the Register of Deeds of Ogemaw County for the Girards' 1978 tax liabilities. On June 12, 1980, it filed a tax lien for the Girards' 1979 assessed federal income tax liabilities, and on December 9, 1983, it filed yet another notice of tax lien for the Girards' 1981 tax liabilities.

On February 8, 1984, the IRS issued levies and notices of seizure against all of the debtor's realty in order to collect the unpaid tax liabilities; it appears that the IRS did comply with the procedures set out in the Internal Revenue Code for the seizure of property.[1] On May 9, 1984, 86 days after the seizure, Gordon Girard filed a petition for relief under Chapter 7 of the Bankruptcy Code.

This matter has come before the Court pursuant to an adversary proceeding filed on May 18, 1984 by the debtor seeking to recover the seized property from the IRS. Specifically, the debtor asserts that the notices of seizure and levy are preferential, as they occurred within 90 days of the filing of the petition under Chapter 7, and he requests that this Court "set aside said lien placed upon plaintiff's property by said defendant". The parties have filed cross-motions for summary judgment, which

---

1. The IRS must carefully follow the procedures set forth in the Internal Revenue Code for assessing the tax deficiency, establishing and perfecting its lien, levying against the property and selling it to satisfy the tax debt; failure to comply with the statute will cause the lien or sale to be invalid. *See In re Dunne Trucking Co.,* 32 B.R. 182, 186–88, 10 B.C.D. 1291, 9 C.B.C.2d 464 (Bankr.N.D.Iowa 1983). Although the plaintiff does not admit that the IRS complied with all of

the measures necessary to obtain valid enforceable liens, neither has he pointed to any defect in its actions which would defeat the liens. Our review of the declarations and documents submitted in this case leads us to conclude that the IRS properly obtained and recorded liens on the plaintiff's property and seized the property. As there has as yet been no sale, we obviously do not rule on its validity.

have been argued, briefed and re-briefed. The case is ripe for decision.

## ISSUE PRESENTED

May the debtor set aside the transfer occasioned by the notice of seizure and levy of February 8, 1984, or the liens established by the IRS' filing of notices of lien prior to 1984?

## DISCUSSION

On the basis of the briefs and the representations made by the debtor, it appears that the debtor is not attempting to actually recover the property seized by the IRS for his own direct benefit. The debtor conceded at the hearing that there is no equity in the property for the debtor; he was further willing to stipulate that if there is any equity over and above the amount of the tax liens, it ought to be paid to creditors of the estate rather than to him. What the debtor really seeks is to avoid the liens placed on his property for the tax years of 1969 through 1974. If he is successful in doing so, the tax debts for those years are rendered unsecured and will be discharged in the Chapter 7 case, leaving only the tax debt for the years 1978 and subsequent years due and owing after the bankruptcy. 26 U.S.C. § 6502(a) provides, in relevant part, that when a tax assessment has been made, "such tax may be collected by levy or by a proceeding in court, but only if the levy is made or the proceeding begun ... within 6 years after the assessment of the tax." Here, the assessments at issue were made on February 13 and 27, 1978, and the levy and notice of seizure issued on February 7, 1984, just within the six year period. The plaintiff argues that if the seizure is set aside, the six year period in § 6502 would have expired prior to the debtor's filing his petition for relief, thus rendering the tax debt for

1969–74 unsecured. Moreover, those debts would be discharged, as they do not come within the exception to discharge set forth in 11 U.S.C. § 523(a)(1).[2]

■ The debtor first argues that 26 U.S.C. § 6502(a) requires the IRS to commence court action to obtain possession of the property within six years of the date of assessment or lose its lien on the property. The government has amply refuted this assertion. The failure to complete the collection process within six years of assessment does not necessarily extinguish the lien, as 26 U.S.C. § 6322 provides that "unless another date is specifically fixed by law, the lien imposed by § 6321 shall arise at the time the assessment is made and shall continue until the liability of the amount so assessed ... is satisfied or becomes unenforceable by reason of lapse of time." Moreover, to the extent that § 6502 creates any limitations period on the ability of the IRS to enforce its lien, it only requires that the levy be made or the judicial proceeding begun within six years of the assessment of the tax. It does not require, as the plaintiff seems to imply, that the IRS actually sell the property and otherwise complete the seizure and collection process within that six year period. Once the notice of levy and seizure is made, there is no limitations period on the length of time the IRS may take to complete the seizure, sale, and liquidation process. 26 U.S.C. § 6335 provides only that the sale shall be noticed and conducted "as soon as practicable after seizure of the property". In *United States v. Weintraub*, 613 F.2d 612 (6th Cir.1979), *cert. denied* 447 U.S. 905, 100 S.Ct. 2987, 64 L.Ed.2d 854 (1980), the court, in *dicta*, and citing substantial precedent, said that "there is no time limit whatsoever on an action against a taxpayer to enforce a timely levy or judgment obtained in a timely filed court proceeding."

**2.** It should also be noted here that although the debtor has claimed the real estate seized by the IRS as exempt, this will not help him with the IRS even if the transfers are avoided. Section 522(c)(2) provides an exception to the rule that property exempted is not liable for any pre-petition debts after the closing of the case. Under this exception, properly noticed tax liens follow the property even after the close of the case even though the property may have been exempted by the debtor. Thus, even if the seizure is set aside, the debtor really obtains no benefit unless he can also have the government's liens on the property set aside.

*See Chevron, USA, Inc. v. United States,* 705 F.2d 1487 (9th Cir.1983). Thus, there is no merit to the plaintiff's first argument that the limitations period has run on the government's ability to collect for tax years 1969 through 1974. At most, it can be said that the IRS no longer has the ability to levy on property not already seized with respect to the tax liability in those years. However, this is a moot point, as the debtor has no other property to be seized.

The plaintiff also argues that, by applying the proceeds of any seizure and sale to the years 1969 through 1974, the IRS is obtaining a preference. He argues that if the seized property is used to satisfy the liens for those years rather than the liens for the years 1978, 1979, 1980 and 1981, it will be receiving more than it could have if the property had been distributed pursuant to the liquidation provisions in the Bankruptcy Code. He takes the position that were the distribution to be made according to §§ 507(a) and 726, there would be no distribution to the tax years of 1969 through 1974, those claims being rendered unsecured by the passage of the statute of limitations. This would leave only the liens for 1978 and afterward to be satisfied. Debtor further contends that there is no

statutory authority for the IRS to apply the proceeds to the earliest tax years first, and that its attempt to do so is contrary to the spirit of the Bankruptcy Code generally and to the preference sections in particular. In response, the government points to 26 U.S.C. § 6342 as authority for its ability to apply the proceeds of any sale to the earliest tax debts first. The IRS also asserts that the transfer occasioned by the seizure of February 8, 1984 is not preferential.

The IRS' reference to § 6342 is less than convincing. That provision states that the proceeds are to be applied first to the expenses in the seizure and sale process then applied to "the liability in respect to which the levy was made or the sale was conducted." Nowhere in the statute does it expressly provide that the proceeds are to go to the oldest tax debts first and the newest tax assessed liabilities last. However, the levy and seizure, and any payment made through this Chapter 7 proceeding, are indisputably involuntary payments of the tax debt.[3] In such situations, the IRS has a *policy* of applying the first payments to the oldest tax debts and so on, and this practice has been upheld by the courts. *See United States v. DeBeradinis,*

---

**3.** The leading case regarding whether a tax payment is voluntarily made is *Amos v. Commissioner,* 47 T.C. 65 (1966) wherein the court stated that:

> An involuntary payment of Federal taxes means any payment received by the United States as a result of distraint or levy or from a legal proceeding in which the government is seeking to collect its delinquent taxes or file a claim therefor.

*Id.,* 47 T.C. at 69. As to whether tax payments made through a bankruptcy proceeding are involuntary, at least one court of appeals has intimated that such payments would be involuntary. *Muntwyler v. United States,* 703 F.2d 1030, 1034, n. 2. (1983). Moreover, this position has been expressly adopted by the district court in this district. In *In re Mister Marvins, Inc.,* 48 B.R. 279 (E.D.Mich.1984), the Chapter 11 trustee obtained approval from the bankruptcy court to designate the manner in which payments to the IRS were to be applied. After reviewing the above cases, the district court reversed, noting that "distribution of property of the estate is determined by the priority which has been established in the Bankruptcy Code, and pay-

ments to creditors, including the United States, cannot be deemed to be voluntary." *Id.,* 48 B.R. at 281. Although one bankruptcy court held that payments to the IRS pursuant to a debtor's Chapter 13 plan were voluntary, *In re Frost,* 19 B.R. 804, 809, 8 B.C.D. 1377 (Bankr.D.Kan. 1982), that holding was later reversed. *In re Frost,* 47 B.R. 961 (D.Kan.1985).

It is our opinion that payments here would be involuntary simply by virtue of the fact that the IRS was forced to resort to levy and seizure of the property pre-petition, however, even were we inclined to hold that tax payments made to the IRS pursuant to a Chapter 11 or 13 plan were voluntary in some circumstances, we are bound to follow the holding of *In re Mister Marvins, Inc., supra* as a matter of tax law. See *In re St. Louis Freight Lines, Inc.,* 45 B.R. 546, 551, 12 B.C.D. 647, 650, 11 C.B.C.2d 1317, 1323 (Bankr.E.D.Mich.1984). Moreover, distributions pursuant to a Chapter 7 liquidation can hardly be characterized as voluntary. Therefore, we find that any proceeds realized by the IRS pursuant to seizure and sale of the debtor's property constitutes an involuntary payment.

395 F.Supp. 944, 952 (D.Conn.1975), *aff'd. mem.* 538 F.2d 315 (2nd Cir.1976). Thus, the IRS' application of the funds is valid as a matter of tax practice.

■ Although there is some theoretical merit to the plaintiff's argument that the seizure was a preferential transfer, we analyze the question somewhat differently than he. The debtor characterizes the seizure on February 8, 1984, as a transfer which, assuming that the IRS would receive all of the proceeds from the sales thereof, would allow it to receive more than it would have in a Chapter 7 liquidation. However, strictly speaking, the seizure did not occasion a transfer of title of the debtor's property to the IRS. At most, it is a transfer of constructive possession. The seizure of the property is "merely a step in the collection process. Seizure does not in and of itself operate to transfer title to the government." *In re Brewster-Raymond,* 344 F.2d 903, 910 (6th Cir.1965), *quoted in In re Troy Industrial Catering Service,* 2 B.R. 521, 523 (Bankr.E.D.Mich.1980). "Ownership of the property is transferred only when the property is sold to a bona fide purchaser at a tax sale." *United States v. Whiting Pools, Inc.,* 462 U.S. 198, 211, 103 S.Ct. 2309, 2317, 76 L.Ed.2d 515, 526 (1983). *See* 26 U.S.C. § 6339(b). Thus, to be consistent with both the Bankruptcy Code and the Internal Revenue Code, no material[4] "transfer" ever really occurred because of the seizure. Instead, the situation is more accurately characterized as a situation where the IRS, having seized the property but not yet sold it, is at least in constructive possession of the property as a custodian for the estate. The trustee could then bring an action under either §§ 542 or 543 to compel the turnover of that property to the estate. Since the debtor is for all practical purposes standing in the shoes of the trustee in this adversary proceeding, the debtor could bring such an action to compel turnover of the property.

Although the complaint seeks avoidance of a preference under § 547, and does not make a request for turnover under § 542 or § 543, the plaintiff's briefs do argue that a turnover order would be appropriate. We will therefore interpret his claim for relief broadly pursuant to F.R.Civ.P. 15(b) and Bankruptcy Rule 7015, and construe the pleading as a request to compel the government to return the seized property to the estate for the benefit of creditors.

Thus, the government has not yet received a preference because it has not sold the property and applied the proceeds to the tax debt. However, if the IRS proceeds to sell estate property for its sole benefit, it might receive a preference, because even though the IRS may have a valid lien on the debtor's property, that does not mean that it is first in line for payment upon the liquidation of that property by the trustee. Under § 724(b) of the Bankruptcy Code, holders of prior valid secured liens and holders of priority claims against the estate receive distribution from the liquidation of those assets before the IRS' lien may be satisfied therefrom. If the IRS seizes property, sells it, and fails to pay creditors who would otherwise come before it under § 724, there would be a preference. 4 *Collier on Bankruptcy,* ¶ 542.42, 547–136, 37 (15th ed. 1985) sets out a fair description of this concept:

> Payments in satisfaction of valid statutory liens are not excepted from the preference section. Typically the holder of a statutory lien that is not avoidable under § 545 will normally hold a secured claim so that payment in satisfaction of such a claim will not have a preferential effect under § 545(b)(5). However, where the lien is avoided or avoidable under § 506(d), 548 or 724(a) or where the lien is subordinated under § 510(c)(2), 724(b), or 724(d), the payment in satisfaction of a lien may create a preferential transfer. The preference will result when the ele-

---

**4.** "Material" is used advisedly. The debtor does not seek mere avoidance of the transfer of constructive possession to the IRS; what he really seeks is avoidance of the transfer which gave it an interest in the title. The only transfer which

did that occurred when the lien was placed on the property. § 547(e)(1). Since those transfers occurred several years prior to the preference period, they are not actionable under § 547(b).

ments of § 547(b)(1)–(4) are·met and the holders of the lien receive more on account of a satisfaction of lien than would have been received had the transfer not been made and the estate was liquidated under Chapter 7.

*See also In re Community Hospital of Rockland County,* 15 B.R. 785, 788, 8 B.C.D. 540, 542, 5 C.B.C.2d 895, 899 (Bankr.S.D.N.Y.1981) where it was noted that "while the satisfaction of a validly secured lien is generally not a preference, the violation of the scheme of distribution contemplated by the Bankruptcy Code, including the subordination of valid tax liens to priority claims and administration expenses, as reflected in the Code § 724(b), could conceivably constitute a voidable preference."

 We agree with the debtor that the IRS could, in theory, receive a preference if it obtained more than its statutorily-prescribed share of the proceeds from a sale of the debtor's property. However, he has failed to show us that the government might actually receive a preference on the facts of this particular case. In order to defeat the government's motion for summary judgment, the plaintiff "was obliged to come forward with every legal theory and all facts necessary to establish that a material issue of fact existed that would preclude summary judgment in favor of [the defendant]." *National Credit Union Admin. v. Michigan National Bank of Detroit,* 771 F.2d 154, 161 (6th Cir.1985). In the instant case the debtor has failed to present any evidence that the IRS will receive a preference upon sale. It was incumbent upon the plaintiff to show us facts to support his hypothetical. Does there exist in this case a person who would receive money from the sale of these assets and the distribution of the proceeds thereof pursuant to the provisions of the Bankruptcy Code on distribution who will receive less if the IRS proceeds to sale outside the aegis of this Court? The plaintiff has failed to allege or show the existence of any such creditors. Therefore, we presume none exists. It is not enough to contend that the government *could* receive a preference; the plaintiff must show us some facts in this case whereby the IRS *would* receive a preference upon sale. Having failed to do so, we find that the eventual sale of the seized parcels will not constitute a preferential transfer to the IRS.

In attempting to establish a preference, the plaintiff argues that if the IRS applies the proceeds of the tax sale in the manner it intends to, the debtor will be injured because a larger portion of his taxes will not be discharged than if the debts are retired according to the debtor's instructions. This argument misperceives the rationale underlying the avoidability of preferential transfers. As § 547(b)(5) makes clear, preferences are transfers which, if not subject to avoidance, permit a particular creditor to receive more than he would receive in a distribution under Chapter 7. Conversely, to the extent a preference favors one creditor, it results in a depleted estate for distribution to other creditors. In other words, preferential transfers are disfavored and subject to avoidance because of the potential harm *to the estate,* not to the debtor due to questions of dischargeability. The effect of a transfer on the debtor is irrelevant in the context of a § 547 action. While the debtor may well suffer if the IRS applies the proceeds to the oldest tax debts first, neither preference nor turnover actions provide any remedy. Accordingly, even when we interpret his request for relief liberally, we find that there are no questions of fact which, if resolved in his favor, would entitle the plaintiff to an order either avoiding the seizure or for turnover of the property.[5]

---

5. Although for the purposes of this opinion we have treated the subject realty as property of the bankruptcy estate, it is in fact not part of the estate any longer. On October 9, 1984, the Chapter 7 trustee filed a "no asset report" indicating that there were no assets available to the estate for liquidation and distribution to creditors. The filing of the no asset report constitutes an abandonment by the trustee, and the property returned to the debtor, subject to any security interests thereon. Accordingly, even though this Court could order the IRS to turn

To summarize, we make the following conclusions of law:

(1) The tax liens of the IRS for the period of 1967 through 1974 and from 1978 through 1980 are validly perfected and not subject to avoidance under either § 545 or § 547 of the Bankruptcy Code;

(2) The IRS levied against the debtor's property within the six-year period prescribed by 26 U.S.C. § 6502; therefore, the government is not precluded from enforcing those liens;

(3) The levy and notice of seizure did not effect a material transfer of the debtor's property to the government; instead, the material transfers occurred when the tax liens were recorded, more than 90 days before the debtor's bankruptcy petition was filed;

(4) There are no facts in dispute from which this Court could determine that the eventual sale of the property would create a preference in favor of the government; therefore, the IRS may proceed to sell the property; and

(5) The IRS may apply any available proceeds from the sale in any manner it chooses.

## CONCLUSION

The debtor raises several provisions of the Internal Revenue Code and the Bankruptcy Code in an attempt to obtain a discharge of at least some of his outstanding tax debts. Unfortunately for him, the IRS has proceeded to collection of the tax liabilities within the means provided by the Internal Revenue Code, and there is nothing in either that statute or the Bankruptcy Code which allows the avoidance of the government's liens, nor is there any rule precluding the IRS from proceeding to sale of the seized assets and applying the proceeds in a manner consistent with IRS policies. Accordingly, the plaintiff has no cause of action against the IRS.

over the seized property of the estate, *United States v. Whiting Pools, Inc.,* 462 U.S. 198, 103 S.Ct. 2309, 76 L.Ed.2d 515 (1983); *In re Troy Industrial Catering Service,* 2 B.R. 521, 5 B.C.D.

Upon presentation, an order consistent with this opinion will be entered.

1243, 1 C.B.C.2d 321 (Bankr.E.D.Mich.1980), there is no reason to do so here and the IRS may proceed to sell the property without further order of this Court.