Benjamin R. **NEIER**, Plaintiff,

v.

**UNITED STATES** of America,
Defendant/Counterclaimant,

v.

Kent L. **PARIS** and Donald W.
Chesser, Counterclaim and
Crossclaim Defendants.

Civ. A. No. 86–1062–T.

United States District Court,
D. Kansas.

April 29, 1991.

**672**

Charles S. Kennedy, U.S. Dept. of Justice, Office of Special Litigation, Tax Div., John D. Griffith, Washington, D.C., for defendant/counterclaimant.

James M. Armstrong, Richard D. Ewy, Eric F. Melgren, Foulston & Siefkin, Wichita, Kan., for Donald W. Chesser.

## MEMORANDUM AND ORDER

THEIS, District Judge.

This matter is before the court on the motion of counterclaim and crossclaim defendant Donald W. Chesser for an order of the court establishing the amount of assessment at issue (Doc. 85). The court held oral argument on this motion April 4, 1991. The court has received and reviewed the parties' joint statement to the court on the amount of the assessment at issue, Doc. 98, filed April 15, 1991. Also pending before the court is the government's motion for partial summary judgment (Doc. 89). This matter has been fully briefed but was not argued at the hearing. Trial in this action is set to commence May 13, 1991. This action involves an assessment asserted by the Internal Revenue Service (IRS) against Benjamin R. Neier, Kent L. Paris and Donald W. Chesser pursuant to section 6672 of the Internal Revenue Code. Neier and Paris have previously been dismissed.

Sections 3102(a) and 3402(a) of the Internal Revenue Code of 1954 (26 U.S.C.) require an employer to deduct and withhold income and social security (FICA) taxes from the wages paid to its employees. Section 6672 imposes a penalty upon those "responsible persons" who willfully fail to pay over the withheld employment taxes, also called "trust fund" taxes. Section 6672 provides in relevant part:

> Any person required to collect, truthfully account for, and pay over any tax imposed by this title who willfully fails to collect such tax, or who willfully attempts in any manner to evade or defeat such tax or the payment thereof, shall, in addition to other penalties provided by law, be liable to a penalty equal to the total amount of the tax evaded, or not collected, or not accounted for and paid over.

26 U.S.C. § 6672(a). The government seeks this penalty for the alleged willful failure of Chesser to collect, truthfully account for, and pay over the withheld income and employee FICA taxes due from Independent Manufacturing Co., Inc. for the third and fourth quarters of 1981 and from B/J Manufacturing Co., Inc. for the second, third and fourth quarters of 1981.

## I. Amount of the Assessment at Issue

The crossclaim filed by the government sets forth claims arising from three calendar quarters of unpaid withholding taxes with respect to B/J Manufacturing Company ("B/J Manufacturing") and two calendar quarters with respect to Independent Manufacturing Company ("Independent Manufacturing"). The parties request that the court rule on six legal issues in advance of trial, which would then allow the parties

to compute the exact amount of the assessment.

■ The court believes the taxpayer is entitled to know the exact amount being sought by the Internal Revenue Service and the method by which the IRS determined that sum. Therefore, the court must reject the government's procedural challenges to Chesser's motion, including Chesser's alleged failure to preserve this issue in the Final Pretrial Order and the alleged untimeliness of this motion.

### A. Allocation of Payroll Tax Deposits

The 100% penalty arises from an employer's failure to deposit the amounts withheld from its employees' paychecks for federal income tax and FICA deductions. The withheld amounts of federal income tax and employee FICA contributions, along with the employer's FICA contributions, must be deposited periodically with the United States Treasury. The 100% penalty is assessed only regarding the federal withholding and employee FICA ("trust fund" taxes); the penalty is not assessed for the employer's share of the FICA contributions or any other taxes ("non-trust fund" taxes).

The parties have agreed that the payroll tax deposits made by the corporations during the time of the tax accruals should be allocated proportionally to trust fund and non-trust fund taxes. The parties dispute whether, with respect to the calculations for B/J Manufacturing for the second and third quarters of 1981, the government can now reallocate payments from bankruptcy distributions to non-trust fund taxes. With respect to the calculation for Independent Manufacturing third quarter of 1981, there are no later bankruptcy payments in a sufficient amount for the government to balance out the payroll tax deposit adjustments.

The government's argument that it may now reallocate other payments received from or on behalf of the corporations arises from the established principle, not challenged by Chesser, that the IRS may allocate involuntary payments as it chooses. In *In re Energy Resources Co., Inc.*, 871 F.2d 223 (1st Cir.1989), *aff'd*, — U.S. —, 110 S.Ct. 2139, 109 L.Ed.2d 580 (1990), the First Circuit discussed the distinction between voluntary and involuntary tax payments:

> IRS policy has long permitted a taxpayer who *"voluntarily"* submits a payment to the IRS to designate the tax liability (*i.e.*, "trust fund" or non-trust fund tax debts) to which the payment will apply. However, where the taxpayer *"involuntarily"* makes the payment, the IRS has granted the taxpayer no such freedom to designate the allocation; the IRS will decide how to apply the payment; and it will almost always decide to apply the payment to a non-trust fund tax debt first.
>
> .... The IRS adds that the Tax Court defined the "voluntary"/"involuntary" distinction authoritatively in *Amos v. Commissioner*, 47 T.C. 65 (1966), where it said,
>
> > [a]n involuntary payment of Federal taxes means any payment received by agents of the United States as a result of distraint or levy or from a legal proceeding in which the Government is seeking to collect its delinquent taxes or file a claim therefor.
>
> *Amos*, 47 T.C. at 69. *But see also Muntwyler [v. United States]*, 703 F.2d [1030], at 1033 [ (7th Cir.1983) ] ("The distinction between a voluntary and involuntary payment in *Amos* and all the other cases is not made on the basis of the presence of administrative action alone, but rather the presence of court action or administrative action resulting in an actual *seizure* of property or money, as in a levy.") (emphasis in the original).

871 F.2d at 227–28 (emphasis in original; citations omitted). It is not disputed that the tax deposits made at the time of the tax accruals were voluntary and that the bankruptcy asset distributions were involuntary.

The government noted at the hearing that if the payroll tax deposits are reallocated proportionally (a point which the government has now conceded), some non-trust fund taxes would now be unpaid since

the IRS had initially allocated those deposits to non-trust fund taxes. The government's position is that it can now reallocate the bankruptcy distributions to pay off the non-trust fund portion before applying any payments to the trust fund taxes. Chesser argued that the IRS made its allocation of the bankruptcy payments years ago and cannot now change that allocation.

■ The issue as presented by the parties in their joint statement is whether the government may now reallocate involuntary bankruptcy payments, originally allocated elsewhere, to non-trust fund taxes in order to replace the incorrectly allocated payroll tax deposits. The court agrees with the position of the government. Had the IRS correctly allocated the payroll tax deposits (in accordance with Chesser's position) in the first place, certain non-trust fund items would have remained unpaid. When the IRS received certain payments from the bankruptcy estates of Independent Manufacturing and B/J Manufacturing, the IRS would have been entitled to allocate those involuntary payments first to the outstanding non-trust fund taxes before applying any of the payments to the trust fund taxes. The court is aware of no reason forbidding the reallocation sought by the government, especially in light of the other reallocations occurring in the present case.

### B. *Accounting for Income Tax Refund*

The parties agree that an income tax refund of $84,217.71 was ordered by the bankruptcy court to be applied to the unpaid taxes owed the government by the corporations. Fourteen percent of the tax refund was allocated to B/J Manufacturing and 86% was allocated to Independent. The parties agree that, with appropriate interest adjustments, the government properly allocated only an amount of $78,393.00 (representing the amount of the refund with accrued interest to the date the refund became due, instead of to the date of the court order) to unpaid taxes accrued to such date. The parties dispute the allocation of this refund.

The government asserts that it properly allocated the federal income tax refund as follows: (1) $835.27 to Independent Manufacturing's unemployment tax liability for 1981; (2) $5,842.16 to B/J Manufacturing's unemployment tax liability for 1981; (3) $51,924.22 to Independent Manufacturing's employment tax liability for the third quarter of 1981 (the IRS allocated this amount to penalties and interest; the government agrees with Chesser that this allocation was incorrect); (4) $16,147.91 to Independent Manufacturing's employment tax liability for the fourth quarter of 1981 (only $15,139.17 was unpaid for this quarter; the government agrees with Chesser that the balance of the government's allocation, $1,008.74, was incorrectly applied to interest); and (5) $3,643.44 to B/J Manufacturing's employment tax liability for the second quarter of 1981. *See* Govt. Exh. 4.

Chesser argued at the hearing that he does not contest the authority of the IRS to allocate the corporate income tax refund in the manner asserted by the government. Chesser argued that he is unable to verify that these allocations actually occurred. Chesser seeks the contemporaneous Certificates of Assessment and Payments regarding the alleged unemployment tax allocations.

■ The court agrees that Chesser is entitled to some documentation accounting for the allocation of the amounts received from the income tax refund of Independent Manufacturing and B/J Manufacturing. The issue for the court is whether the government's microfilm data sheet (Govt. Exh. 4) is sufficient to establish the allocations it asserts with respect to unemployment taxes, and if it is not sufficient, whether the amount in question should be applied to unpaid trust fund taxes or can now be applied in the government's discretion. The parties have not provided the court with any legal arguments for or against the use of Government Exhibit 4.

■ To prove the contents of the Certificates of Assessment and Payments regarding the alleged unemployment tax liabilities, the original documents are required. *See* Fed.R.Evid. 1002. The origi-

nals are not required, and other evidence of the contents of those documents is admissible to prove the contents of those documents if the originals are lost or have been destroyed, unless the government lost or destroyed them in bad faith. *See* Fed.R. Evid. 1004(1). Government Exhibit 4, which the parties refer to as a microfilm data printout, would be admissible at trial to prove the contents of the Certificates of Assessment upon a showing that the original Certificates of Assessment have been lost or destroyed without bad faith on the part of the government. If the government can make this showing of lack of bad faith, the exhibit would be admissible. In the absence of authority to the contrary, the court will allow the use of Government Exhibit 4, upon the proper showing by the government.

C. *Assessment in Bankruptcy of Interest and Penalties, and the Application of Payments Thereto*

The parties agree that the government is not entitled to apply payments to post-petition accruals of penalty and interest, and that its application of payments to penalty and interest, if allowed by law, cannot exceed the amount of penalties and interest reflected on its bankruptcy proofs of claim. In other words, the larger amounts reflected on the government's Forms 4340 (Certificates of Assessments and Payments) may not have payments applied to them. Counsel for the government has conceded that the government has incorrectly applied $51,924.22 to interest and penalties for Independent Manufacturing third quarter 1981 and that it incorrectly applied $1,008.74 to interest for Independent Manufacturing fourth quarter 1981. The parties agree that no pre-bankruptcy petition interest or penalties have accrued or are assessable for these quarters.

The parties dispute whether payments or credits were applied to assessments of interest and penalty in bankruptcy. The issue for the court is whether the law allows the government to apply credits to offset penalties and interest reflected on its proofs of claim (Exhibit M) for purposes of calculating Chesser's assessment; and if so, whether any application of payments in excess of these amounts must be reapplied to the trust fund taxes, or whether any excess can now be applied in the government's discretion.

■■■ Chesser argued in his brief that the post-petition assessment of penalties and interest violates section 502 of the Bankruptcy Code. Section 502 provides in pertinent part:

> (a) A claim or interest, proof of which is filed under section 501 of this title, is deemed allowed, unless a party in interest ... objects.
>
> (b) ... if such objection to a claim is made, the court, after notice and a hearing, shall determine the amount of such claim as of the date of the filing of the petition, and shall allow such claim in lawful currency of the United States in such amount, except to the extent that—
>
> . . . . .
>
> (2) such claim is for unmatured interest;
>
> . . . .

11 U.S.C. § 502(a), (b)(2). Unmatured interest is interest which is not yet due and payable. *In re Joyce,* 41 B.R. 249, 255 (Bankr.E.D.Pa.1984). Under section 502(b)(2), interest stops accruing on claims as of the date the petition is filed. *In re Pharmadyne Laboratories, Inc.,* 53 B.R. 517, 522 (Bankr.D.N.J.1985); *In re Collins,* 24 B.R. 77, 79 (Bankr.E.D.Mich.1982). Post-petition interest is, therefore, not allowable. *See In re Christian,* 25 B.R. 438, 439 (Bankr.D.N.M.1982).

■■■■ Post-petition interest on a debtor's pre-petition federal tax liability is unmatured interest. *In re Reich,* 66 B.R. 554, 557 (Bankr.D.Colo.1986), *rev'd on other grounds,* 107 B.R. 299 (D.Colo.1989). Nothing in the Bankruptcy Code, however, prevents the allowance of earned pre-petition interest on a tax claim. *In re Ridgley,* 81 B.R. 65, 69 (Bankr.D.Or.1987). The United States is entitled to pre-petition interest on the debtor's pre-petition tax debt. *In re Pharmadyne Laboratories,* 53 B.R. at 522. Pre-petition penalties are also al-

lowable. *See In re Falwell Excavating Co., Inc.,* 40 B.R. 315, 316 (Bankr.W.D.Va. 1984); *In re Program Management & Design Associates, Inc.,* 25 B.R. 144, 145–46 (Bankr.D.Mass.1982).

 Chesser's principal argument appears to be that all assessments of interest and penalties which are made post-petition are barred by section 502(b)(2). Creditors' proofs of claim are necessarily filed post-petition, since only after the filing of a bankruptcy petition is a creditor required to file a proof of claim. Interest and penalties which have matured prior to the filing of the petition are allowable, even though those claims are filed post-petition. The court believes that any objection to the allowance of the interest and penalties set forth in the government's proofs of claim should have been made to the bankruptcy court. The government may apply credits to offset the penalties and interest reflected on its proofs of claim for purposes of calculating Chesser's assessment. Any amounts in excess of the amounts reflected in the government's proofs of claim may be applied in the government's discretion.

### D. *Bankruptcy Asset Distributions of B/J Manufacturing*

The parties agree that $80,292.63 was distributed from the bankruptcy estate of B/J Manufacturing to be applied to the government's claim. The parties dispute whether that amount was allocated in full. The government argues that it properly allocated the distribution to various items specified in the joint statement (Doc. 98 at pp. 6–7) and that all these amounts are reflected on Certificates of Assessments and Payments previously provided to the court except for those detailing the unemployment tax liabilities for 1981–1982.

Chesser argued at the hearing that he merely wishes to see the documentation which shows how the IRS allocated those distributions to the various tax debts. For the same reasons noted above, Chesser is entitled to some documentation accounting for the allocation of the amounts received from the bankruptcy estate of B/J Manufacturing. However, if the original Certifi-

cates of Assessments and Payments are lost or destroyed, the government may prove their contents through other means.

### E. *Allocation of Payments Among Quarters*

The parties dispute whether the government can allocate bankruptcy payments among tax periods (as opposed to taxes) in its discretion. The issue presented is whether the government may allocate involuntary payments among periods in its discretion in calculating a one hundred percent penalty or whether its regulations require it to allocate to the earliest periods first.

The government cites *Gray v. United States,* 586 F.Supp. 1127, 1132 (D.Kan. 1984) for the proposition that the government can apply involuntary or undesignated payments in its discretion. The government notes that its allocations are not random or illogical but are designed to maximize the government's recovery in accordance with law. Chesser acknowledges the well established rule that the government may allocate involuntary or undesignated payments to whichever taxes it chooses (i.e., trust fund vs. non-trust fund). Chesser argues that once the government has allocated a payment to a certain tax, its own rules require it to allocate first to the oldest tax outstanding.

Chesser cites two IRS Revenue Rulings in support of his position. Revenue Ruling 73–305 provides in relevant part:

The issue relates to the application, by the Internal Revenue Service, of a partial payment of tax, penalty, and interest, assessed for one or more taxable periods, made by a taxpayer regularly employing the cash receipts and disbursements method of accounting. . . .

. . . . .

Where additional taxes, penalty, and interest are assessed for one or more taxable periods against a taxpayer whose income is reported on the cash method of accounting, a partial payment thereon tendered to and accepted by the Internal Revenue Service with specific directions

by the taxpayer as to its application will be applied in accordance with such directions....

Where additional taxes, penalty, and interest are assessed for one or more taxable periods and there are no specific instructions as to the application of the partial payment tendered by the taxpayer, the amount of the payment will be applied by the Service to tax, penalty, and interest, in that order, for the earliest period, then to tax, penalty, and interest, in that order, for the next succeeding period, until the payment is absorbed....

 · · · · ·

This Revenue Ruling is applicable to all taxes under the Internal Revenue Code of 1954, except ... withheld employment taxes, ...

Rev.Rul. 73–305, 1973–2 C.B. 43. Revenue Ruling 79–284 provides in relevant part:

Rev.Rul. 73–305, 1973–2 C.B. 43, holds that partial payments of assessed tax, penalty, and interest are to be applied as the taxpayer designates. If the taxpayer fails to give specific instructions as to the application of the partial payment voluntarily tendered, the amount of such payment will be applied by the Service to tax, penalty, and interest, in that order, for the earliest period, then to tax, penalty, and interest, in that order, for the next succeeding period, until the payment is absorbed. Rev.Rul. 73–305 further states, however, that it is not applicable to Alcohol, Tobacco and Firearms Taxes, withheld employment taxes and collected excise taxes.

HOLDING

Rev.Rul. 73–305 applies to withheld employment taxes and collected excise taxes where the taxpayer provides specific written instructions for the application of a voluntary partial payment. If no designation is made by the taxpayer, the Internal Revenue Service will allocate partial payments of withheld employment taxes and collected excise taxes to tax, penalty, or interest in a manner serving its best interest.

Rev.Rul. 79–284, 1979–2 C.B. 83.

■■■ Chesser argues that the government's own rules require it to allo-cate first to the oldest tax outstanding. Chesser cites *In re Girard,* 57 B.R. 66, 69–70 (Bankr.E.D.Mich.1985) in support of his position. In *In re Girard,* the court stated that the IRS has a policy of applying payments to the oldest tax debts first. 57 B.R. at 69–70 (citing *United States v. DeBeradinis,* 395 F.Supp. 944, 952 (D.Conn. 1975), *aff'd without written op.,* 538 F.2d 315 (2d Cir.1976)). The *DeBeradinis* court, noting that Revenue Ruling 73–305 applies only to voluntary payments, rejected the taxpayer's argument that involuntary payments received by the United States should have been applied in his favor instead of in the IRS's favor. 395 F.Supp. at 952. To the extent the *Girard* court held that involuntary payments are to be applied to the oldest tax debts first as a matter of IRS policy (*see* 57 B.R. at 69–70), this court believes the *Girard* court was in error. The *DeBeradinis* case, upon which the *Girard* court relies, held that Revenue Ruling 73–305 works to the benefit of only those taxpayers who voluntarily make payments prior to the commencement of litigation. 395 F.Supp. at 952. The two Revenue Rulings by their terms apply only to voluntary payments. Only undesignated voluntary payments will be allocated to the oldest taxes first. The two Revenue Rulings cited by Chesser do not support his position that the IRS should apply involuntary payments to the oldest tax first.

### F. *Accrual of Interest*

■■ The parties dispute whether the court should, and may, abate interest for part or all of the period of this assessment. The government asserts that the court is without jurisdiction to abate interest, that the accrual of interest to the present date would be the same whether or not the government had previously reduced the assessment to judgment, and that the government is not responsible for any undue delay. Chesser argues that the government should not be allowed to accrue interest on the assessment made against him because the government has caused unreasonable delay in the prosecution of this matter and

in the production of information which would allow the matter to proceed. Chesser asserts that the court has common law, statutory and equitable authority to abate some or all of this interest.

The only authority Chesser has cited for his position is section 6404(e) of the Internal Revenue Code. Section 6404(e) provides for the discretionary abatement of an assessment of interest on any deficiency attributable in whole or in part to any error or delay by the IRS. Although administrative procedures require a claim for abatement to be filed on a specified form, Chesser argues that he has been unable to file such a claim because he has been unable to determine what the actual amount of the assessment and interest asserted against him was.

Section 6404(e) of the Internal Revenue Code provides in pertinent part:

> In the case of any assessment of interest on—
>
>> (A) any deficiency attributable in whole or in part to any error or delay by an officer or employee of the Internal Revenue Service (acting in his official capacity) in performing a ministerial act, or
>>
>> (B) any payment of any tax described in section 6212(a) to the extent that any error or delay in such payment is attributable to such an officer or employee being erroneous or dilatory in performing a ministerial act,
>
> the Secretary may abate the assessment of all or any part of such interest for any period. For purposes of the preceding sentence, an error or delay shall be taken into account only if no significant aspect of such error or delay can be attributed to the taxpayer involved, and after the Internal Revenue Service has contacted the taxpayer in writing with respect to such deficiency or payment.

26 U.S.C. § 6404(e)(1). This section by its terms does not give the court authority to abate an assessment of interest. Rather, section 6404(e) gives the Secretary of the Treasury authority to abate interest. Although Chesser argued both in his pleadings and at the hearing that the court has

the authority to abate the assessment of interest, he has cited no support for his position in any of his pleadings. In the absence of any case or statutory law, the court will not abate the assessment of interest for any or all periods while this case has been pending.

In conclusion, the court holds as follows: (1) payroll tax deposits are to be allocated on a proportional basis and the bankruptcy distributions may be reallocated; (2) Government Exhibit 4 is sufficient to establish the allocations with respect to unemployment taxes, upon a showing by the government that the original documents are lost or destroyed through no bad faith of the government; (3) the assessment of interest and penalties for pre-petition taxes as allowed by the bankruptcy court is appropriate; (4) the government shall provide some documentation accounting for its allocation of the distributions from the bankruptcy estate of B/J Manufacturing; (5) the government may allocate involuntary bankruptcy payments in its discretion; and (6) interest shall be included in the assessments.

## II. Government's Motion for Partial Summary Judgment

The magistrate recently granted Chesser's motion to amend the Pretrial Order to allege a claim of unreasonable settlement against the government. The amendment to the Pretrial Order added the following issue:

> Whether Counterclaim and Crossclaim defendant Chesser's liability for this assessment, if any, is reduced or eliminated by any unreasonable or preferential settlement made, or by any other unreasonable or preferential relief provided, by defendant and counterclaimant the United States, to other parties who were potentially "responsible persons" for the unpaid employment taxes of employees of Independent and/or B/J.

The government now seeks summary judgment on that claim. The court acknowledges that the government did not provide the court with a statement of the relevant facts, as required by D.Kan. Rule 112(a)(2)

and 206(c). The court is, however, quite familiar with the facts of this case from the government's earlier motion for summary judgment and the facts disclosed at the hearing.

The court is familiar with the standards governing the consideration of a motion for summary judgment. The Federal Rules of Civil Procedure provide that summary judgment is appropriate when the documentary evidence filed with the motion "show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). A principal purpose "of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses...." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). The court's inquiry is to determine "whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986).

The burden at the summary judgment stage is similar to the burden of proof at trial. The court must enter summary judgment, "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322, 106 S.Ct. at 2552. The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact on its claim. Rule 56, however, imposes no requirement on the moving party to "support its motion with affidavits or other similar materials *negating* the opponent's claim." *Id.* at 323, 106 S.Ct. at 2553 (emphasis in original). Once the moving party has properly supported its motion for summary judgment, the nonmoving party may not rest upon mere allegations or denials, but must set forth specific facts showing a genuine issue for trial, relying upon the types of

evidentiary materials contemplated by Rule 56. Fed.R.Civ.P. 56(e). Each party must demonstrate to the court the existence of contested facts on each claim it will have to prove at trial. *Celotex*, 477 U.S. at 324, 106 S.Ct. at 2553. The court reviews the evidence on summary judgment under the substantive law and based on the evidentiary burden the party will face at trial on the particular claim. *Anderson*, 477 U.S. at 254, 106 S.Ct. at 2513.

■■ At the summary judgment stage, the judge's function is not to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial. *Anderson*, 477 U.S. at 249, 106 S.Ct. at 2510. Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are functions of the finder of fact, not the functions of the judge when ruling on a motion for summary judgment. The evidence of the nonmoving party is to be believed. All justifiable inferences are to be drawn in favor of the nonmovant. *Id.* at 255, 106 S.Ct. at 2513.

■■ The government argues that this preferential settlement claim is barred by the Rules of Evidence. Rule 408 provides:

Evidence of (1) furnishing or offering or promising to furnish, or (2) accepting or offering or promising to accept, a valuable consideration in compromising or attempting to compromise a claim which was disputed as to either validity or amount, is not admissible to prove liability for or invalidity of the claim or its amount. Evidence of conduct or statements made in compromise negotiations is likewise not admissible.

Chesser responds that Rule 408 is inapplicable since he does not seek to offer evidence of settlement "to prove liability for or invalidity of the claim or its amount." Fed.R.Evid. 408. Chesser does not, however, specify the purpose of his amended claim. The issue as identified in the Pretrial Order is whether Chesser's liability for this assessment is reduced or eliminated by any unreasonable or preferential set-

tlement made by the United States with other parties who were potentially "responsible persons." The court reads this issue as a challenge to the validity of the government's claim, in whole or in part, based on its settlement with Neier and Paris. Evidence of the terms of the settlements with Neier and Paris would not be admissible for this purpose.

 Aside from the evidentiary problems associated with trying to prove this claim, the court believes that Chesser's unreasonable settlement claim fails to state a claim upon which relief can be granted. Consequently, summary judgment is appropriate. The IRS is not obligated to pursue every person with responsibility for paying withholding taxes. Instead, the IRS has the discretion to assess the 100% penalty against any one or more persons liable under section 6672. *See Howard v. United States*, 711 F.2d 729, 735 (5th Cir.1983); *Gens v. United States*, 222 Ct.Cl. 407, 414, 615 F.2d 1335, 1339 (1980). When the government seeks satisfaction of a payroll tax liability by means of penalty assessments, it is entitled to "choose the liable parties from whom it will collect." *Gens*, 222 Ct.Cl. at 415, 615 F.2d at 1339–40.

 Under section 6672, responsible persons are jointly and severally liable for the underlying withholding tax delinquency. *USLIFE Title Insurance Co. of Dallas v. Harbison*, 784 F.2d 1238, 1243 (5th Cir.1986); *see Wollman v. United States*, 571 F.Supp. 824, 826 (S.D.Fla.1983) (each responsible person is individually liable for the entire amount, along with the corporation itself). The fact that more than one person is responsible for a particular delinquency does not relieve a responsible person from personal liability, nor can a responsible person avoid liability on the ground that the government should first collect the tax from someone else. *USLIFE Title*, 784 F.2d at 1243. The failure of the government to assess another responsible person or to proceed against the corporate employer does not release the taxpayer from liability for the penalty. *North v. United States*, No. 88–4261–R

(D.Kan. July 11, 1990) (1990 WL 113901, 1990 U.S.Dist. LEXIS 10167).

 Although the government may assess several responsible persons, the IRS does not collect multiple penalties. Upon payment in full by one or more of the responsible persons, the amount of the unpaid penalty is abated as to each. *Gens*, 222 Ct.Cl. at 414, 615 F.2d at 1339; *Wollman*, 571 F.Supp. at 826. As a matter of administrative practice, any collections recovered from one taxpayer will be applied to reduce the amount due from the others. *Wollman*, 571 F.Supp. at 827. A settlement between the government and one responsible person cannot be objected to by another potentially responsible person. *See Wollman v. United States*, 571 F.Supp. 824, 826 (S.D.Fla.1983) (approving settlement with the government over objections of another potentially responsible person).

In his response to the present motion for summary judgment, Chesser relies primarily on *I.R.S. v. Blais*, 612 F.Supp. 700 (D.Mass.1985). In *Blais*, the IRS, having previously collected the entire 100% penalty from the other party to the action via a tax lien, settled with the other party and refunded approximately half of the amount collected. The district court stated that, by settling with one party, the government affected the rights of the other party because the 100% penalty under section 6672 may be collected only once. *Id.* at 703. The government is given broad power to settle cases with some taxpayers while not settling with all. *Id.* at 704 (citing 26 U.S.C. § 7122(a)). The court stated:

One taxpayer cannot directly attack the settlement of the government with another taxpayer. Nevertheless, an unreasonable or preferential settlement with one among two or more persons claimed to be liable for a single 100% penalty may be relevant to the government's case against another of those persons.

The law abhors power without accountability. Unpoliced power invites abuse and corruption. When the government has the power to affect the rights of third persons, it cannot do so irresponsi-

bly and wholly without accountability. In the case of § 6672, Congress gave the government the power to proceed against all or any of the responsible persons. A government decision, for example, to proceed against one person rather than another because it appears to be easier to collect from that person is a permissible decision. However, decisions must not be based upon invidious or legally improper criteria.

*Id.* The court stated that, as an example, a government claim that it might be free to settle on the grounds of race could not be immune from judicial scrutiny. *Id.* The court stated, without the citation of any authority, that

> in some circumstances, a decision to settle with one for less than the 100% penalty and then proceed to collect the § 6672 tax from others may be improper. A taxpayer who alleges such preferential action should be allowed an opportunity to prove that an arbitrary settlement has adversely affected his rights.

*Id.* On the merits, the court found the settlement to be reasonable, based on the government attorney's belief that the case against the nonsettling party would be easier to prove than the case against the settling party.

In *Gens v. United States*, 222 Ct.Cl. 407, 615 F.2d 1335 (1980), the taxpayer sought an abatement in the amount of the refund given by the IRS to an associate of the taxpayer as part of a settlement involving other years. The court stated:

> We must assume that the Government has acted in good faith in such settlement, there being nothing in the record to indicate otherwise. Cognizant that, ordinarily, the Government may 'choose the liable parties from whom it will collect' and that the refund in this case to one of plaintiff's former business associated may be said to be tantamount to an exercise of the power to choose, we hold that plaintiff is not entitled at the present time to an abatement in the amount of the collection refunded to his former associate.

*Id.* at 416, 615 F.2d at 1340. Other than this dicta in *Gens* and the dicta in *Blais*, the court is aware of no authority for the claim Chesser seeks to raise. The court declines to follow this dicta.

Chesser has no legal basis for his complaint that the government settled with Neier and Paris. While Chesser's complaint is not particularly clear, it appears that Chesser seeks to show how the government's settlement with Neier and Paris (for an amount not disclosed to the court) has adversely affected him. Apparently, Chesser finds the remaining amount of the assessment against him to be unreasonably high. Chesser is individually liable for the entire amount of the assessment. The government was not obligated to pursue Neier and Paris. The fact that Neier and Paris were or could have been responsible does not relieve Chesser from liability for the entire amount of the assessment. Had the government not pursued Neier and Paris, Chesser would have no legal basis to complain. Had the government pursued only Chesser, he would be facing liability for the entire amount of the penalty. As it is, Chesser is entitled to credit for the payments made by Neier and Paris. Obviously, had the government collected more from Neier or Paris, the assessment against Chesser would have been reduced accordingly. However, Chesser cannot avoid liability in whole or in part by arguing that the government should have collected more from Neier and Paris.

IT IS BY THE COURT THEREFORE ORDERED that Chesser's motion for an order of court establishing amount of assessment (Doc. 85) is hereby granted in part and denied in part.

IT IS FURTHER ORDERED that the United States' motion for partial summary judgment (Doc. 89) is hereby granted.